MAYOR ET ALS.
*vs.*
BLACHE ET ALS

But a tutor duly appointed, or one in whom the office devolves by operation of law, represents the minors under his charge in all civil suits or acts and has the administration of their estates.

The tutor can, under authority of the general administration to collect and sue for debts, institute suit in behalf of the minor, for the recovery of a debt due the succession.

---

## MAYOR ET ALS. *vs.* BLACHE ET ALS.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The endorsers of notes given to the corporation of New-Orleans, in pursuance of an express agreement, to secure the payment of a *dificit* discovered to be due by the city treasurer, for whom the endorsers are already sureties for the faithful administration of his office as treasurer, cannot discharge themselves on the ground that said notes were executed in error, because it is alleged they were not bound under their surety bond.

It is not every error that will invalidate a contract. The error must be in some material point, such as in the motive or consideration, the person with whom it is made, or in the subject matter of the contract.

Considered as mere endorsers, there is nothing showing why the defendants endorsed the notes in question, and as between the holders and endorsers a plea that they endorsed without consideration would not avail them.

The surety is discharged when by the act of the creditor the subrogation of his rights, privileges and mortgages, can no longer be operated in favor of the surety.

Where the corporation of New-Orleans released a mortgage in their favor on certain property of the city treasurer, without the consent of one of his sureties; *held,* that the surety is discharged thereby.

But where a co-surety is present and consents to the release of a mortgage on the property of the principal debtor and that it be sold and applied to the payment of a deficit for whicch he is bound in a surety bond, he is not thereby released, although his co-surety not consenting and bound *in solido* with him, is released.

The laws of the United States requiring the accounting officers to examine and settle the accounts of their debtors at stated periods is directory and constitutes no part of the contract with the sureties; and a failure to call them to account does not discharge the sureties.

When the city treasurer is re-elected his new bond is for a new contract, and the sureties who sign it cannot avail themselves of a neglect of duty to call the treasurer to account for defalcations of the past year.

Where an obligation is valid as to the principal obligor, the sureties cannot avoid responsibility incurred under it without showing they were deceived and induced to sign it by devices intentionally practised on them.

If the city treasurer under a resolution of the city council employs a book-keeper, and puts it in his power to withdraw money from the treasury without the warrant of the mayor, and to disguise his peculations by false entries and fraudulent accounts, instead of being a mere book-keeper, he becomes the confidential agent of the treasurer who is liable for his misconduct.

This case is composed of two suits instituted by the corporation of New-Orleans against Charles L. Blache, late treasurer, and his sureties, the first on a promissory note for three thousand one hundred and twenty-seven dollars and twenty-

six cents, held by the corporation and signed by C. L. Blache, and endorsed by Joseph Le Carpentier and Martin Blache. The second against C. L. Blache and his sureties on their bonds, for the sum of fourty-four thousand four hundred and thirty-seven dollars and eighty-eight cents, the amount of the alleged defalcations of said reasurer tfrom the year 1823 to 1829 inclusive.

The petition alleges that the corporation holds a note of three thousand one hundred and twenty-seven dollars and twenty-six cents, dated 22d September 1829, signed by C. L. Blache, payable to the order of Joseph Le Carpentier and Martin Blache, and by them endorsed, which they have failed to pay, and prays judgment angainst them *in solido*. The parties answered separately. C. L. Blache the drawer plead a general denial, admitted his signature and puts the plaintiffs on strict proof of his indebtedness. Joseph Le Carpentier and Martin Blache, admitted their endorsement, but denied their liablity, and averred the note sued on, with four others were endorsed by them in pursuance of an agreement with the plaintiffs and the drawer, which agreement was founded and executed in error whereby their obligation is not binding. They annex the agreement to their answer as part of it, and pray to be dismissed, and that the other four notes endorsed by them at the same time and under the same agreement, be ordered to be delivered up and cancelled as having been given and executed in error.

The agreement was made by a public act on the 20th of October, 1829, and signed by the Mayor on the part of the Corporation, C. L. Blache, city treasurer, and Le Carpentier and Blache as his sureties. Its object was to give time of one, two, three, four and five years to the treasurer to pay a deficit of fourteen thousand seven hundred fifty-one dollars and twenty-six cents, occasioned by the infidelity of one of his collectors, for which he was considered responsible, on executing his notes, with Le Carpentier and M. Blache as endorsers.

The endorsers avered that they were not liable on their

original bond as the sureties of the treasurer for this
defalcation, and that the notes were executed in error.

The corporation of New-Orleans about the same time instituted suit against the city treasurer, C. L. Blache, and his sureties, to recover a deficit in the city funds of forty-four thousand four hundred thirty-seven dollars and eighty-eight cents, which was alleged as having accrued from the year 1823 to 1829, both inclusive.

The petition states that the said Blache was annually appointed city treasurer, and gave bond each year for the above period with two sureties in the sum of twenty thousand dollars. Joseph Le Carpentier and Nicolas Lesconflair signed as sureties for the years 1823, '24 and '25; Joseph Le Carpentier and Joseph Jardela signed as sureties for the year 1826, and the said Joseph Le Carpentier and Martin Blache signed as sureties for 1827, '28 and '29. In all of which bonds C. L. Blache binds himself as principal, and the other persons as his sureties *in solido*, conditioned for the faithful performance of the duties of the office of treasurer of the city of New-Orleans.

The petition charges that it was the duty of the city treasurer to receive and pay over all monies, and to keep regular accounts of the real and personal property, and to collect the rents belonging to and due the corporation; and that during the time from the year 1823 to 1829 inclusive, the said treasurer received all the revenues and monies accruing to the city, but failed and refuses to account for a large sum, to wit: the sum of forty-four thousand seven hundred and nineteen dollars, for which he is a defaulter, and together with his several sureties, is liable to pay and reimburse to the corporation.

The plaintiffs then expressly charge that said C. L. Blache and his sureties for the year 1823, are liable for two thousand five hundred eighty-one dollars and fourteen cents, a deficit which occurred that year, after signing the treasurer's bond. That they are liable for eighteen thousand one dollars and eighty-four cents, the amount of the deficit for the years 1824 and '25; and for four thousand two hundred fifty-four

dollars and ten cents, the deficit for the year 1826; and for one thousand eight hundred seventy-five dollars and fifty-two cents, as the deficit accruing between the 4th of September, 1827, and the 10th of October, 1829; and also for eighteen thousand six dollars and thirty-five cents, which the treasurer retained from the treasury, and for which he became a defaulter on the 8th of December, 1829, making together the aggregate sum of forty-four thousand seven hundred and nineteen dollars.

The plaintiffs allege that the treasurer is liable for the whole amount of this defalcation, and that the sureties are liable for the several sums which accrued during the years for which they signed the treasurer's bonds respectively. They pray judgment against C. L. Blache for the whole sum claimed, and also *in solido* for the same sum against Joseph Le Carpentier, who signed the treasurer's bonds for each of the years during which the alleged deficits accrued; and against Nicholas Lesconflair for twenty thousand five hundred and eighty-three dollars, and against Martin Blache for twenty-four thousand one hundred and thirty-five dollars, being the sums which accrued respectively during the years for which they signed the treasurer's bond as sureties.

C. L. Blanche, the principal, pleaded a general denial.

Le Carpentier, widow Lesconflair and M. Blache filed their separate answers and pleaded the general issue, but admitted their respective signatures to the bonds of the treasurer for the years charged to them, and alleged that they were executed in error; and that the corporation, by a public act of the 13th of May, 1826, acknowledged the correctness of the treasurer's accounts up to that period, and discharged one of his sureties, (Lesconflair) who had signed the three first bonds sued on, whereby the co-surety was also discharged in consequence thereof; and that the plaintiffs cannot recover of him, Le Carpentier, because they are unable to subrogate him to their rights, privileges and mortgages, accruing from the first three bonds against the principal therein, having impaired said rights, privileges and mortgages by their said acts; whereby this defendant is

virtually discharged.    Le Carpentier further stated that he signed the remaining four of the treasurer's bonds as surety in error, which was caused by the plaintiffs, and prayed to be discharged.

The two suits were consolidated and tried together.

*Martin Blache,* in an amended answer, alleges that the bonds signed by him as surety for the treasurer, for the years 1827, '28 and '29, and also his endorsements, were executed in error, believing as he did that the treasurer, at the time of entering into each of said bonds, had rendered faithful accounts of his administration for each preceding year; that he was induced to this belief by the gross misconduct and negligence of the plaintiffs in examining and approving said accounts, declaring the accounts of the said treasurer correct, and annually re-electing him, which the defendant charges as amounting in law to *dol* or faud; that he never would have signed said bonds, had the *deficits* of the treasurer been made known to him before or at the time of signing them, as it was the duty of the plaintiffs to have done; that by reason of this *fraud,* the said bonds and his endorsements are *void,* or at least *voidable.*

*Le Carpentier,* in an amended answer, made the same allegations in relation to his suretyship, arising from his endorsement of said notes, and signing the bonds of the treasurer for the years 1823, '24, '25, '26, '27, '28 and '29.    A similar amended answer was put in by widow Lesconflair, in behalf of her deceased husband, who signed as surety the bonds of the treasurer, for the years 1823, '4 and 5.

Upon these issues the parties went to trial.

The evidence introduced was voluminous, embracing all the proceedings of the city council, the books of accounts of every description during the period of the alleged defalcations, and other documents and testimony of witnesses, chiefly relating to the state of the treasurer's accounts, the amount of his deficits, the time they accrued, and how they occurred. The question of the liability of the sureties was made mainly to depend on the fact of the corporation having settled the accounts of the treasurer annually, and proclaimed them

correct up to the year 1829, by which, as the sureties allege, they were induced to become his bondsmen.

The district judge considered the arrangement of the 20th of October, 1829, and the notes executed and endorsed to cover the sum of fourteen thousand seven hundred fifty-one dollars and twenty-six cents, the amount of Guerin's deficit, by the treasurer and his sureties as made in error, and should be considered as though it had never been made. But he considers the treasurer responsible for the whole deficit; the faults of Guerin, his book-keeper, will not excuse him. In relation to the deficits of the treasurer, the district judge remarks that the sureties are not liable, because " it is in evidence that a committee of finance was appointed annually to examine the accounts of the treasurer, that they annually made their report approving his accounts, and he was annually re-elected by a unanimous vote; that the tacit mortgage which the corporation had on the property of the treasurer, was by their organ, the mayor, from time to time raised, and the property sold, or a very large part of it.

" There were two plain principles of law applicable to this case, by either of which the sureties are exonerated. The one is, 'that if a surety suffers an injury resulting from the negligence of the creditor or obligee, he is discharged.' 2. 'That if a creditor has, by his own act, disabled himself from ceding his actions against his principal debtor, to which the surety has an interest to be subrogated, the surety is discharged.' The plaintiffs, by raising the tacit mortgage, which they had on the property of the treasurer, enabled him to sell his property, and disabled them from ceding their action of mortgage to the sureties."

The district judge gave judgment annulling the arrangement and transaction of the 20th of October, 1829, and in favor of the corporation against C. L. Blache, for fifty-nine thousand four hundred and seventy-one dollars, and interest thereon, and discharged the sureties.

The corporation appealed.

*Eustis,* for the corporation of New-Orleans, made the following points in argument:

1. The evidence establishes conclusively the liability of the principal debtor.

2. The bonds of the sureties must be enforced, unless the sureties can prove that they have been legally discharged, or that their obligations were originally null.

3. As to any fact, tending to discharge them, the burthen of proof rests with them; they holding the affirmative of the proposition. *Civil Code,* 2229.

4. The error, gross neglect or fraud, set up in the defence, must be proved. *Civil Code, art.* 1842.

5. The error or fraud must be such as to effect the nature and substance of the contract. *Civil Code. art.* 1835 to 1839, 1841.

6. If the error relate to an accidental matter of the contract, unless it be the principal cause of making it, it is not a cause of nullity. *Pothier on Obligations, no.* 18. *Merlin's Rep. de jurisprudance. Verbo Erreur.* 6 *Toulier, no.* 39. *Voet com: ad Pandectas, lib.* 18, *tit.* 1, *sec.* 4, 5, 6.

7. In the contract of surety, the relations between the parties are necessarily of so intimate and confidential a character, that *in the absence of any proof,* the motive or principal cause of the contract cannot be assumed, because it cannot be known. Therefore it cannot be ascertained, without any proof, that the parties contracted through error.

8. The neglect of the committees of the city council as to the examination of the accounts of the late treasurer, ought to have deceived no one, for by a solemn decision of this court, reports of committees of the legislature examining the accounts of the treasurer of the state, are considered as not being made with any particular care or attention to details. 8 *Martin, N. S.,* 642, *Louisiana Insurance Co.* vs. *Morgan.*

9. The laches imputed to the committees of the city council, appointed to examine the treasurer's accounts being

unaccompanied with fraud or deceit, forms no ground for nullity or discharge of an obligation like this under consideration. The examinations are for the benefit of the creditor *alone,* and form no part of the contract between the creditor and the sureties. *Vide United States* vs. *Kirkpatrick,* 9 *Wheaton,* 734; in which the case of the *People* vs. *Jansen,* in 7 *Johnson's Reports,* is overruled. The *United States* vs. *Vanzandt,* 11 *Wheaton,* 185, in which the case of the *United States* vs. *Kirkpatrick,* is revised and confirmed.

*Morphy,* for the defendants and appellees, made the following points:

1. That the late Nicholas Lesconflair has been fully released and exonerated from all liability, as appears from the notarial deed of the 13th of May, 1826, and the letter of the mayor to the city council, of the 22d of April, 1826.

2. The bonds of 1824 and '25, subscribed by Nicolas Lesconflair, are not binding on his heirs, having been every year signed by him through error, that is, under the belief that the previous accounts of the treasurer were correct, and that he owed nothing to the corporation; which error has proceeded from and been created by the acts of the corporation.

3. That the heirs of Nicolas Lesconflair must be discharged, because the city council, by their own acts, have placed themselves in the impossibility of subrogating them to the mortgage which the corporation had on the property of the treasurer, under the old *Civil Code, p.* 457, *art.* 25. In consequence of said release, the property, subsequently sold in 1829, by virtue of the agreement entered into on the 20th of October, 1829, was found free of the mortgage, resulting from the bonds of 1823, '24 and '25.

4. In relation to Le Carpentier, the release granted to Nicolas Lesconflair on the 13th of May, 1826, discharged Le Carpentier, who was jointly bound with him. *Civil Code, art.* 2199 *Toullier, &c.,* 7, *p.* 401, *no.* 331.

5. The bonds from 1823 up to 1829, were subscribed through error.

6. The bonds of 1827, '28 and 29, each of them releases the previous bonds and cancels the mortgage resulting from them, and shows clearly that the sureties never intended to be responsible at one time for more than twenty thousand dollars, and were always under the impression that Blache owed nothing to the city for previous years, and that his property was fully sufficient to cover that sum.

7. That an examination of the cash having never taken place since 1822, no one can say when the deficiency, if any exists, took place.

8. That the settlement of the 20th of October, 1829, and the endorsements given in pursuance thereof, are not binding on M. Blache or Joseph Le Carpentier, the same having been subscribed through error: 1st, Because believing themselves bound under their bond of 1829, for all deficits of said year, they made this settlement under the impression that the sum of fourteen thousand seven hundred fifty-one dollars and twenty-seven cents, was the only existing deficit, and that they were bound for it.   2d, Because the said sum of fourteen thousand seven hundred fifty-one dollars and twenty-seven cents, instead of belonging to the year 1829, as stated in the settlement, is made up of the arrears of taxes and ground rent, back to 1818, when none of these parties were sureties.   Every year the treasurer becomes liable for all arrears up to the first Monday of October, unless he proves that he has used due diligence to collect; therefore the sureties of each year ought to have been made responsible; if they have not, the sureties of 1829 cannot be made responsible.

9. That the sureties ought to be exonerated, because the city council, by their improper interference and conduct in relation to the treasury, and the keeping of the books, have created such confusion and embarrassment in the books and accounts of the treasurer, that the latter appears to have received large sums of money which have never come into his hands.

10. That the sureties are not bound *in solido*, the clause or condition of solidarity having been casually inserted in the bonds, although not contemplated by the law under which the bonds were given. 2 *La. Reports*, 397, *Boswell* vs. *Lainhartt.*

The case was further argued by Mr. *Mazareau* and Mr. *D. Seghers*, for the defendants.

BULLARD, J. delivered the opinion of the court.

These two cases, relating to alleged defalcations in the accounts of one of the defendants, as treasurer of the city of New-Orleans for a series of years, were consolidated and tried together in the District Court. Judgment was rendered in favor of the sureties and endorsers, and on the appeal both have been argued together. We shall consider them separately, beginning with that which relates to the notes given for the supposed deficit of 1829 occasioned by the infidelity of Jean Guerin.

In this first case the corporation sues to recover the amount of a note drawn by C. L. Blache, then treasurer of the city, and endorsed by Joseph Le Carpentier and Martin Blache, which was protested for non-payment at maturity.

The drawer admits that he signed the note but denies that he owes any thing to the plaintiffs and requires strict proof.

The endorsers admit in their answer that they endorsed the note, but they allege, that it was given and endorsed together with four others of the same date, amounting in all to fourteen thousand seven hundred and fifty-one dollars and twenty-six cents, in pursuance of an agreement between the defendants and the mayor of the city of New-Orleans, on the 20th October 1829, which they allege was altogether founded and executed in error, and consequently, not obligatory. This agreement, which is annexed to the answer, entered in pursuance of several resolutions of the city council, recites that C. L. Blache having been appointed city treasurer for the current year, the other defendants had become his sureties in

The endorsers of notes given to the Corporation of New Orleans in pursuance of an express agreement, to secure the payment of a deficit discovered to be due by the City Treasurer, for whom the endorsers are already sureties for the faithful administration of his office as Treasurer, cannot discharge themselves on the ground that the said notes were executed in error, because it is alleged they were not bound under their surety bond.

a bond in the penal sum of twenty thousand dollars, that the treasurer had lately sustained a loss of fourteen thousand seven hundred and fifty-one dollars and twenty-six cents, by the infidelity of Jean Guerin his collector, which loss is acknowledged to relate to his administration for the year 1829, that in order to enable him to meet this deficit, the city Council had offered to give the treasurer and his securities, a delay of one, two, three, four and five years to reimburse the treasury, upon the treasurer giving five notes endorsed by his securities, making together the amount of the loss with interest at six per cent added. The parties declare that it is well understood, that this arrangement is not to operate a novation, but the bond for the faithful administration of the treasurer shall remain in all its force and vigor for the sum and cause therein stipulated until he shall be regularly discharged. It is further stipulated that Le Carpentier and M. Blache are bound for the notes merely as simple endorsers, the payment of these not being secured by the mortgage resulting from the original bond. This agreement appears to have conformed to the terms and conditions required by the resolutions of the city council, a copy of which is annexed to the act and expressly referred to. Among other things the mayor was authorized to raise the mortgage existing in favor of the City, on the property of the Treasurer in order to facilitate him in selling it to pay the deficit.

Such is the substance of the settlement and agreement, which the endorsers allege was founded and executed in error. They were the securities on the bond for 1829; and supposing the bond valid, a question which we shall examine hereafter in another part of the case, does the record furnish us evidence to show, that the notes were given in error and consequently void?

It is not every error, that will invalidate a contract; it must be in some point, which was a principal cause for making it, either as to the motive for making it, the person with whom it is made, or the subject matter of the contract itself. The principal cause is the motive or consideration, without which the contract would not have been made, the real existence

EASTERN DIS.
*May*, 1834.

MAYOR ET ALS
*vs.*
BLACHE ET ALS

It is not every error that will invalidate a contract. The error must be in some material point, such as in the motive or consideration, the person with whom it is made, or in the subject matter of the contract.

EASTERN DIS.
May, 1834.
═════════
MAYOR ET ALS
*vs.*
BLACHE ET ALS of which is a condition precedent, without which the consent, would not have been given.   These are the principles estab- lished by the Code on this subject, and by which this contract must be tested.

Considered as mere endorsers, there is nothing showing why the defendants endorsed the notes in question, and as between the hold- ers and endorsers a plea that they endorsed with- out consideration would not avail them.   Considered as mere endorsers it is impossible to ascertain why the defendants endorsed the notes in question, and indeed as between the holder and endorsers a plea, that they endorsed without consideration would not avail the latter. But place them in a more favorable light, and allow them the right of pleading every exception which the principal might do in avoidance of the contract and what are the facts. They appear already liable for the deficit occasioned by the infidelity of Guerin, as securities for Blache.   If there was a real deficit, their previous liability was a sufficient considera- tion.   But the contract was favorable to them, it gave a long delay, it enabled the treasurer to sell off his property in order to meet the demand, it prevented an immediate recourse against them on the bond.   It is contended that they sup- posed this the only deficit, and were therefore induced to come into the agreement.   If by this is meant, that if they had known the deficit to be greater, they would not have consented to the arrangement, such an assertion contradicts the agreement itself, by which they stipulate that this bond should continue in force till the end of the year, when alone the full extent of their liability could be ascertained.   It is further said that the defalcation occasioned by Guerin was not so great as was represented and there was error in this.   It is however certain that the deficit in the treasury was much greater at that time, and how much was caused by Guerin, the treasurer had the best, if not the only means of ascer- taining.   The evidence before us shows, that the greater part of the sum for which the notes were given was lost by the misconduct of Guerin.   The treasurer himself does not allege error in this settlement, and if he did, it could not avail him, because whether the loss was caused by Guerin or not, he was accountable for the real deficit on the books of the treasury.

If the original bond was valid, we are of opinion that the

plea of error cannot be sustained in relation to the note sued on.

In the other case, No. 9315, the plaintiffs allege that C. L. Blache was annually elected treasurer of the city from 1823 to 1829 both inclusive, and for the faithful performance of his duties gave bond with two sureties in the sum of twenty thousand dollars. That for the three first years Joseph Le Carpentier was surety *in solido* with Nicolas Lesconflair. For the year 1826, he bound himself *in solido* with Joseph Jardela, and for the years 1827, 1828, and 1829, with Martin Blache as co-surety. They allege that the treasurer did not faithfully discharge his duties, but that there is a deficit in his accounts of moneys not accounted for, or which through gross negligence he failed to collect, amounting to forty-four thousand seven hundred and nineteen dollars. They pray judgment against the treasurer for that amount; against Joseph Le Carpentier *in solido* for the same sum as found for each and every year, against Lesconflair for the alleged deficit of the three first years *in solido*, of twenty thousand five hundred and eighty-three dollars and three cents; and against Martin Blache for twenty-four thousand one hundred thirty-five dollars and ninety-seven cents *in solido*, with C. L. Blache and Le Carpentier for the three last years. The treasurer is charged with gross negligence and fraud.

The answers of the sureties are separate, and present various grounds of defence, which we shall proceed to examine separately in relation to each of the defendants, beginning with that of Nicolas Lesconflair for the years 1823, '24 and '25.

Among other things not necessary to mention now, this respondent says that the plaintiffs cannot recover of him as the surety of Blache, without subrogating him in the rights, actions and mortgages, which they had against the treasurer, in virtue of the bonds signed by him as security. That by the law in force at that time, the city had a legal mortgage on the estate of the treasurer, which, by the acts of the plaintiffs, has since been released, and the treasurer permit-

EASTERN DIS. ted to sell this property so mortgaged; and it is no longer in
May, 1834.
their power to subrogate him on his paying the debt.

MAYOR ET ALS      The surety, says the Code, is discharged when by the act
*vs.*
BLACHE ET ALS of the creditor the subrogation of his rights, mortgages and
The surety is
discharged when privileges, can no longer be operated in favor of the surety.
by the act of the
creditor the sub- *La. Code, art.* 3030.
rogation of his
rights, privileges      By the Civil Code in force when the three first bonds
and mortgages,
can no longer be were executed, the city had a tacit mortgage on all the real
operated in favor
of the surety.  estate of the treasurer.    *Old Code, p.* 457, *art.* 25.    If,
therefore, it be shown that the plaintiffs, by their acts,
without the consent of this defendant, have put it out of
their power to enforce the mortgage, and consequently that
it could not, either by legal or express subrogation, inure
to the benefit of the surety on his paying the bond, it follows
that the defendant Lesconflair is discharged.

It is shown by a resolution of the city council, on the 7th
of October, 1829, that the mayor was authorised to cancel
the mortgage which the corporation had on a lot of ground
belonging to the treasurer, in the faubourg Marigny, and on
his undivided half of another lot, held in common with Jean
Guerin, in order to facilitate him in making sale of his pro-
Where the cor- perty to pay a deficit in his accounts, as treasurer for that
poration of New-
Orleans released year.    The property was *afterwards* sold with the consent
a mortgage in
their favor on of the corporation, and the mortgage cancelled by the mayor.
certain property
of the city trea- It is not contended that Lesconflair consented to this arrange-
surer; *held*, that
the surety is dis- ment, and it is clear that if he was now to pay the alleged
charged thereby.
deficit for the years for which he was security, it would not
be in the power of the corporation to enable him to enforce
the mortgage, in order to reimburse himself.    The court
therefore considers him as released from all liability.

Joseph Le Carpentier the co-surety of Lesconflair, pleads,
among other things which we shall notice hereafter in con-
nexion with the defence of Martin Blache, that he is releas-
ed from all liability on the bonds for 1823, '24 and '25,
because the mayor, by an act before a notary on the 13th
of May, 1826, gave a full discharge to Lesconflair, who was
bound *in solido* with him.    The mayor, in that act, refers to
a resolution of the city council of the 25th of April, 1826,

as his authority.   That resolution is as follows: "On motion
of Mr. Marigny, resolved that the council accepts as sureties
of Mr. C. L. Blache, treasurer of the city, Messrs. Joseph
Le Carpentier and Joseph Jardela."

That resolution only authorised the mayor to accept Jardela as surety for the year 1826 in lieu of Lesconflair who had been so previously.   It did not authorise the mayor to release Lesconflair from his previous liabilities, nor does it appear that the city council ever approved the accounts of the treasurer for the year 1825.   There is in the record the report of a committee charged to examine an account of receipts and expenditures for the first six months of that year, that they found the account exact and correct.   But it does not appear, that even that report was adopted by the council, much less was there any verification of his accounts or of the state of the treasury, at the end of the fiscal year ending in March 1826.   The charter does not authorise the Mayor alone to bind the Corporation by contracts.

But he contends further that he is discharged in consequence of the release of the mortgage on the property of the treasurer above spoken of, by which his co-surety was exonerated.   That if his co-surety *in solido* is released, no recovery can be had against him.   To this it may be answered, *volenti non fit injuria.*   Le Carpentier assented to that release of mortgages, and the sale of the property of the treasurer, he was the agent of the parties in making the sales as auctioneer, the transaction turned to his advantage, was intended for his relief as surety for the year 1829 when it took place, it was one of the conditions upon which he signed the notes on account of the deficit of Guerin.

<div style="float:right; width:30%; font-size:smaller;">But where a co-surety is present and consents to the release of a mortgage on the property of the principal debtor, and that it be sold and applied to the payment of a deficit for which he is bound in a surety bond, he is not thereby released, although his co-surety not consenting and bound *in solido* with him, is released.</div>

We proceed to examine the most important ground of defence set up by J. Le Carpentier and Martin Blache in relation to the validity of the three last bonds subscribed by them as sureties for the years 1827, '28 and '29.   They allege that these bonds were signed by them in error and that they were induced to give their consent by the conduct of the corporation in annually approving the accounts rendered by the treasurer and re-electing him.   That the gross

negligence of the plaintiffs amount to fraud, (*dol*,) which invalidates the contract, that they were ignorant of any previous deficit, and were authorised by the conduct of the plaintiffs, to believe that none existed, and that *without that belief*, they would not have subscribed the bonds, and that their consent thus procured by false representations is not binding on them.

The facts in relation to the rendition of accounts and of their approval, are the following. On the 15th of February, the city council resolved, that the account rendered by the treasurer for the years 1821 and '22, up to the last of April, be approved, and the treasurer be requested to publish it. On the 11th of May, 1824, it was resolved, that the account of receipts and expenditures rendered by the city treasurer for the year 1823, be approved; and the treasurer be requested to publish it with an alteration, so as to show, whether the balance in favor of the city at that time, of ninety-four thousand four hundred and thirty-two dollars and twenty-four cents, was in cash, or in notes. On the 6th of March, 1825, the chairman of the committee of finance, submitted to the council, the account rendered by the treasurer for the year 1824, and having reported that the committee had examined it and found it correct, it was approved by the council, and they authorised its publication. On the 20th of August 1825, the chairman of the committee of finance, reported that they had examined the account rendered for the six months ending, June 30th, and found it exact and correct. No resolution was taken on this report. This appears to have been the last account ever rendered. Nor does it appear that the real state of the treasury was ever inquired into previously to 1829. No inquiry was ever made whether the treasurer had faithfully administered, and whether the balances exhibited by his accounts were really on hand.

By the 3d section of an act, supplementary to the several acts concerning the city and corporation of New Orleans, approved March 14th, 1820, it is declared that it shall be the duty of the mayor and council, to cause the treasurer of the corporation to publish on the first Monday of March in each year, an accurate, detailed and just statement of the receipts and

expenditures and *condition of the treasury*, of said body politic, and publish the same in at least two of the Gazettes printed in New Orleans; the said statement before it is printed, shall be carried by the treasurer aforesaid before some judge or justice of the peace, before whom he shall testify on oath, that the same is a faithful and correct statement. Section 9th, should the treasurer of the said corporation, refuse to account as directed by this act, he shall pay a fine of two thousand dollars. Said fine to be recovered on motion before the District Court by the attorney general or his assistant, ten days notice of which shall be given to the said treasurer, and it is hereby made the duty of the attorney general, to inquire and see that the provisions of this act are faithfully fulfilled, and proceed as the case may require. The rules of proceeding in the city council provide for the appointment of a standing committee of ways and means, among whose duties is, that of examining and verifying the accounts of the treasurer.

But the annual publication of the detailed account of receipts and expenditures, for the information of the citizens, forms but a small part of the duties of the treasurer. It is made his duty by law " to receive and pay all monies belonging to said corporation, to keep regular accounts of their real and personal property, to collect the rents, dues and demands, belonging thereto, once in every year, at such time as shall be directed by the said mayor and city council; to publish an account of the receipts and expenditures of the said treasury, provided that no payments be made by the said treasurer, unless the same be authorised by a warrant drawn by the persons exercising the functions of mayor, in pursuance of an order of the city council."

We derive but little aid on this question from adjudicated cases. Two cases have been cited by the plaintiffs' counsel, decided by the Supreme Court of the United States; those of the *United States* vs. *Kirkpatrick*, 9 *Wheaton*, 720, and the *United States* vs. *Vanzandt*, 11 *Wheaton*, 188. The first was an action against sureties on a collector's bond. It is the duty of the comptroller of the treasury to call collectors to

The laws of the United States requiring the accounting officer to examine and settle the ac-

EASTERN DIS.
May, 1834.

MAYOR ET ALS
vs.
BLACHE ET ALS

counts of their
debtors at stated
periods, is direc-
tory, and consti-
tutes no part of
the contract with
the sureties; and
a failure to call
them to an ac-
count does not
discharge the
sureties.

an account quarterly, and in case of failure to account, and to issue a warrant of distress against the delinquent; and the question was, whether the neglect of the comptroller to call the collector to an account periodically, according to law and the consequent injury to the sureties, released them from their liability, on the ground of laches. The court say, " it is said the laws required that settlements should be made at short and stated periods, and the sureties have a right to look to this as their security. But these provisions of the law are enacted by the government for its own security and protection, and to regulate the conduct of its own officers. They are merely directory to such officers, and constitute no part of the contract with the surety." In the second case, which was against the sureties of a paymaster, the same principle was re-affirmed.

It is apparent that the question in those cases was as to the effect of negligence on the part of public officers upon an existing contract. Those cases and the one now under consideration would be analagous, if the treasurer had been elected to continue in office during the pleasure of the corporation, with an obligation to render an account annually, and the defendants had been sureties for the whole term. But the question here is not as to an existing contract, but what effect shall be given to the repeated omissions and neglect of the mayor and city council, as relates to a new contract about to be entered into; and the question seems

When the city
treasurer is re-
elected, his new
bond is for a new
contract, and the
sureties who sign
it cannot avail
themselves of a
neglect of duty to
call the treasurer
to account for
defalcations of
the past year.

to be narrowed down to this, shall it be considered as a condition precedent implied in this new contract, that the corporation had complied with the law in strictly calling the treasurer to an account under a preceding one. If, in relation to a contract already entered into, it was considered by the Supreme Court of the United States, that the obligation to call the officer to an account according to law, did not form a tacit condition of the contract itself, it is not easy to perceive how we are to declare, that as to a new contract, it formed a substantive stipulation or condition, that under a previous one the treasurer had been regularly called to render his accounts, and that he was not a defaulter. If a

new treasurer had been elected, and new sureties had been offered, could they have set up such a defence as to the treasurer of the preceding years?

The treasurer of 1827 must be regarded as totally distinct from that of 1828, although the same man was elected. The obligations of the sureties is expressly limited to the year. But it is said here is an error, created by the conduct of the plaintiffs; the argument is that if the sureties had known that the treasurer was in arrears for the preceding years, they would not have signed the contract; that their ignorance was owing to the gross negligence of the mayor and city council, and that this gross negligence is equivalent to fraud, (*dol,*) which vitiates all contracts.

"Fraud," says the Code, " as applied to contracts, is the cause of an error, bearing on a material part of the contract, or continued by artifice with design to obtain some unjust advantage to the one party, or loss to the other." *Civil Code, art.* 1841.

This error must be on some material part of the contract, and the artifice or manœuvre must be designed to obtain an unjust advantage. The maxim that gross negligence is equal to fraud, will not supply the want of proof, that the conduct or acts by which the sureties were deceived, was done with intent to deceive them in relation to this contract. That the maxim might perhaps be invoked to prove the members of the city council and the mayor personally liable to the city corporation for any loss sustained in consequence of their palpable neglect of duty, but we cannot see its bearing on the contract in question in the absence of all proof to show design, nor can we perceive how it forms a material part of this new contract, that a former one had or had not been complied with. *Merlin's Rep. verbo dol, sect.* 1.

It is not pretended that these bonds are not valid as to the principal obligor, and the sureties having acceded to a valid obligation, cannot avoid the responsibility incurred without showing that they were deceived, and induced to enter into the contract by devices practised on them with that intention. These principles seem to us applicable with great force to

Where on obligation is valid as to the principal obligor, the sureties cannot avoid responsibilities incurred under it without showing they are deceived, and induced to sign it by devices intentionally practised on them.

EASTERN DIS.
    May, 1834.
══════════
MAYOR ET ALS
     vs.
BLACHE ET ALS contracts of suretyship. Such are supposed to be the intimate and confidential relations existing between the principal and surety, that it is not easy to show what may have been the inducement for entering into such an engagement.

The principal defendant has urged a variety of matters in his defence, which we shall now proceed to notice.

I. He contends that most of the defalcations charged against him are attributable to the misconduct of a book-keeper, whom he was compelled to employ by a resolution of the city council, and who was paid by the corporation. That the false entries in the books are in his hand writing, and that the corporation is accountable for his conduct. It is true, the treasurer was authorised by a resolution of the city council to employ a book-keeper, but the selection of a person so to be employed was left to himself. If his confidence was betrayed, if instead of making him merely a book-keeper, the treasurer put it in his power to withdraw money from the treasury without the warrant of the mayor, and to disguise his peculations by false entries and fraudulent accounts rendered to the city council, it is clear that instead of a mere book-keeper, he became the confidential agent of the defendant, and that the latter is liable to the corporation for his misconduct.

*If the city treasurer, under a resolution of the city council, employs a book-keeper, and puts it in his power to withdraw money from the treasury without the warrant of the mayor, and disguise his peculations by false entries and fraudulent accounts, instead of being a mere book-keeper, he becomes the confidential agent of the treasurer, who is liable for his misconduct.*

II. It is further alleged that the city council improperly interfered in the manner of keeping the treasury accounts, and thereby created such confusion and embarrassment in the books, that the treasurer appears to have received large sums, which in fact never came into his hands. By a resolution of the 27th of April, 1822, the treasurer was directed to keep the following books, viz: a cash book, a journal, a grand livre, a book for bills payable and receivable, a book for taxes and one for rents. The method of keeping the books according to this ordinance, does not appear to us difficult to comprehend, and in relation to the cash book, nothing is more simple; he is directed to debit himself with all sums received, and credit himself with all sums paid by him, and strike a balance every month.

III. It is further contended that the mayor had been entrusted with funds belonging to the corporation, and that he ought first to be called on to render his account. It appears that the mayor, on various occasions, was authorised by the city council to procure the discount of notes at the different banks for the corporation. His authority extended no further, and the court cannot presume that he acted beyond his powers. But it is shown by positive evidence, that most of the money procured in this way, was paid over to the treasurer, and by very strong presumptions, that the whole was.

The total amount of deficit, as relates to the principal defendant, is forty-four thousand four hundred thirty-seven dollars and eighty-eight cents, independently of that occasioned by the infidelity of Guerin.

The responsibility of Joseph Le Carpentier commenced on the 4th of April, 1823; he must be credited in the above account with a charge for taxes in 1822, amounting to six hundred sixteen dollars and ninety cents, and one hundred thirty-five dollars and sixty cents in cash, deficit for 1822 and '23, and eight dollars charged in November, 1822, in all, seven hundred sixty dollars and fifty cents, leaving a balance of forty-three thousand six hundred seventy-seven dollars and thirty eight cents. The deficit of 1829, greatly exceeded the amount of the bond, and the defendants, Le Carpentier and Blache, having already arranged *in solido* with their principal for upwards of fourteen thousand dollars, although nominally as endorsers, yet we think it was not the intention of the parties that the legal liability of the sureties for that year should exceed twenty thousand dollars. The excess of the deficit should therefore be deducted from the above sum, which will leave a balance against the defendant Le Carpentier of thirty thousand nine hundred twenty dollars and twenty-eight cents. The liability of Martin Blache for the years 1827, '28 and '29, upon the same principles, appears by the evidence, to amount to seven thousand seven hundred fourteen dollars and thirty-three cents.

66

EASTERN DIS.
   *May*, 1834.
═══════════
MAYOR ET ALS
    *vs.*
BLACHE ET ALS

We have reached these results after the most minute and critical examination of the evidence, and the most anxious consideration of the questions of law involved in these cases. It may not be misplaced to state here, that we have detected no evidence of intentional fraud or peculation on the part of the treasurer, personally. He appears before us rather as the victim of a too liberal confidence abused and betrayed; and of that looseness in conducting the business of his department, which is not incompatible with the purest personal integrity.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed, and proceeding to render such judgment as in the opinion of this court ought to have been given below: it is further ordered, adjudged and decreed, that the plaintiffs recover in the case, No. 9118, of the defendants C. L. Blache, Joseph Le Carpentier and Martin Blache, *in solido*, the sum of three thousand one hundred and twenty-seven dollars and twenty-six cents, with interest at five per cent from judicial demand and costs of protest and of this suit in both courts.

And it is further ordered, adjudged and decreed, that the plaintiffs recover of the defendant Charles Louis Blache in the case, No. 9315, the sum of forty-four thousand four hundred and thirty-seven dollars and eighty-eight cents; of Joseph Le Carpentier *in solido* with said C. L. Blache, the sum of thirty thousand nine hundred and twenty dollars and twenty-eight cents; and of Martin Blache *in solido* with the said C. L. Blache and Joseph Le Carpentier, the sum of seven thousand seven hundred and fourteen dollars and thirty-three cents, and that there be judgment in favor of Nicolas Lesconflair: and it is further ordered, that the said defendants, except Lesconflair, pay the costs of both courts.