State vs. Tax Collector et al.

## No. 10,141.

THE STATE OF LOUISIANA VS. M. S. POWELL, TAX COLLECTOR ET AL

Sureties on the bond of an officer cannot avail themselves of laches or omissions of other officers of the State in the performance of duties imposed by law, as a ground of discharge for their own liability.

They cannot plead the ineligibility or disqualification of their principal as a defense.

In a suit against a defaulting tax collector and his sureties, certified extracts from the books of the Auditor of Public Accounts, showing the condition of his account with the State, are competent evidence, and afford *prima facie* proof.

A tax collector is properly charged with the full amount of the tax rolls and licenses, the whole of which he is presumed to have collected, until rebutted by legal vouchers for legal payments or offsets.

The tax collector and his sureties are required by law to make their settlements with the Auditor, and to see that any offsets are duly entered on his books; and if they neglect this duty, they cannot, by parol evidence, contradict the accounts of the Auditor, and claim credits not entered therein.

Sureties are not released because the collections covered by their bond have been paid into the treasury on account of the tax collector for preceding years. Such a disposition was itself as much a misappropriation as if he had devoted it to his private debts.

A power of attorney to bind the constituent "upon any bond whatsoever, either as principal or surety, and to sign the same for her and in her name, either as principal or surety," is such express and special power as is required by Art. 2997 C. C. The term *special* as therein used does not require a designation of the particular act to be done.

APPEAL from the Eighth District Court, for the Parish of East Carroll. *Deloney*, J.

*C. S. Wyly* and *W. G. Wyly* for Plaintiff and Appellant:

1. The sureties of a defaulting tax collector cannot escape liability on the ground that, when they signed the bond, they did so in error, not knowing that such tax collector, qualifying under the commission issued by virtue of his election, was delinquent for collections made under his previous appointment; that, had they known of such defalcation, they would not have signed the bond, and that the Auditor was at fault for not publishing him as a defaulter. 7 Ann. 118, 377; 11 Ann. 549.

2. They cannot set up, as grounds of defense, that their principal was ineligible; that his commission, issued in contravention of a prohibitory law, or a law not allowing a commission to issue to a defaulter; and that the bond they subscribed is invalid. 27 Ann. 568; 7 Ann. 118, 377; 11 Ann. 549; Board of School Directors vs. Judice and others, decided in July, 1887, 39 Ann. p —.

3. They cannot complain that the Governor improperly issued the commission; they can make no defenses that their principal could not make, except that their right of subrogation against their principal has been impaired by some act of the obligee in such bond. 62 N. Y. 88; 6 L. 518; 33 Ann. 383; 4 N. S. 25; 11 Ann. 643; 27 Ann. 568; 7 Ann. 118, 370, 377; 11 Ann. 149; 33 Ann. 17.

4. The principal and his sureties, having subscribed to the bond while he assumed to act as tax collector under his commission, are estopped from denying that he was tax collector, and they are precluded from disputing their liability on the bond; their liability is fixed, whether the title of the officer be good or bad; they are responsible for his acts while he occupies the office; they cannot dispute the recitals of the bond which they have signed, wherein they covenant and agree to become responsible for the fidelity of

State vs. Tax Collector et al.

their principal.    11 Ann. 643 ; 27 Ann. 568 ; 7 Ann. 118, 370 ; 31 Ann, 738 ; 36 Ann. 109 ; 37 Ann. ;21 ; 4 L. 107.

5.  The sureties cannot be heard to complain that the moneys for which their principal settled with the Auditor and Treasurer were improperly imputed in such settlement; that the total amount should have been credited as collections on the roll of 1884, and no part thereof should have been applied to previous years.  The tax collector made that settlement under oath, as required by law.  He could not deny the verity of that settlement, nor can his sureties, who vouched for his fidelity in making proper settlements as well as collections.

6.  If the tax collector makes collections on the roll of one year and applies it in settlement of his delinquency for previous years, such improper application itself is a misappropriation of public moneys, for which his sureties are responsible    7 Ann. 118, 377.

7.  The Auditor's certified abstracts are admissible in evidence to show the state of public accounts he kept with a delinquent tax collector.  The Auditor's books are records of the Executive Department, and are the highest evidence as to the public accounts of the State with her officers.  26 Ann. 268 ; 31 Ann. 423.

8.  Where there is a delinquency, the sureties of a tax collector are authorized to take possession of the tax lists, and they are required by law to make a final settlement with the Auditor in behalf of such delinquent.  Having failed to do so, they are in default, and they cannot be heard to deny the correctness of the Auditor's books.  They are estopped from disputing the indebtedness of their principal, as shown in the certified abstracts from the Auditor's books.  When sued, they cannot introduce parol evidence to show that the Auditor's books are not correct, and that the defaulter was entitled to credits not entered therein.  33 Ann. 351 ; 32 Ann. 974 ; 3 Ann. 631 ; Act. No. —— of Acts of 188 , Sec. ——.

9.  In making the partial settlements with the Auditor, the delinquent tax collector was aware of the balances owing by him on his different accounts with the Auditor.  He made his sworn settlements, showing said balances; he thereby acquiesced in, approved of, and in the most solemn manner admitted his debit balances.  He and his sureties are estopped from denying the correctness of said account.

10.  When the sureties offered the receipts of the Treasurer for settlements, made by the defaulting tax collector, they will be precluded from disputing the recitals of those receipts, and from denying that the funds were properly applied, as stated in said receipts.

11.  The tax collector is chargeable with the full amount of the tax rolls, and if he does not settle by a given date, he is *ipso facto* a defaulter.  31 Ann. 738 ; 3 R. 150 ; 10 Ann. 695.

*F. F. Montgomery* and *J. W. Montgomery* for Defendants and Appellees.

*J. M. Kennedy,* on same side :

Where a power of attorney is a formal written instrument, the powers conferred are to be strictly construed    The meaning of general words will be restricted by the context and construed with reference thereto; and

The authority will be construed strictly, so as to exclude the exercise of any authority not warranted either by the actual terms used, or as a necessary means of executing the authority with effect.  Ewell's Evans on Agency, p. 205; Story on Agency (Bennett's Edition, 1863), pp. 76 and 93.

General words, and the largest powers, must be construed with reference to the subject matter of the procuration, and the objects to be attained or subserved.  They cannot be exercised so as to effect acts which the principal could not be presumed to intend, and which would not promote the apparent ends for which the power was given.  They

State vs. Tax Collector et al.

must be restricted within the scope and spirit of the instrument, and cannot be invoked as authority foreign to the purposes for which it was given. Ewell's Evans on Agency, pp. 208, 209, 211 ; Story on Agency, p. 93, § 83 ; Bank of Charleston vs. Hagan, 2 Ann. 1002; Copley vs. Flint, 6 R. 57; Clay vs. Bynum, 1 N. S., p. 609; Gates vs. Bell, 3 Ann. 62.

The authority of an agent to bind his principal by a contract of suretyship for a stranger, must be express and special. Gates vs. Bell, 3 Ann. 62; State vs. Daspit, tax collector, et als., 30 Ann. 1112; Wallace vs. Branch Bank, 1 Ala. 565; Kingsley vs. Bank, 3 Serg. (Tenn.) 107.

" Where the things to be done are not merely acts of administration, the power must be express and special." C. C., Art. 2997; H. D., p. 831, No. 3.

In a suit upon an instrument purporting to be signed not by the defendent personally, but by his representative, the defendant is not bound to admit or deny his signature in his answer. And if it is denied, or not admitted, the plaintiff is bound to prove it as a part of his case. C. C. 2244, 2245; 29 Ann. 546; 1 Ann. 325; 33 Ann. 1313; C. P. 325.

Where no date is proven in a private instrument *de hors* the act itself, it has no date except that at which it is introduced in evidence. 20 Ann. 465; 6 N. S. 132, 332.

*White & Saunders*, on same side.

The opinion of the Court was delivered by

FENNER, J. M. S. Powell was elected as sheriff and *ex officio* tax collector in 1884, and was commissioned and qualified as such on June 16, 1884, for the full term of four years. In June, 1885, he absconded, and was declared a defaulter to the State and parish for a large amount of taxes not accounted for.

The present action is brought against him and the sureties on his official bond. A separate judgment was rendered against his succession, he having died after suit was instituted, for the amount claimed, without prejudice to the rights and defenses of the sureties, as to whom the case was subsequently tried, resulting in a judgment in their favor.

The sureties, admitting their signatures to the bond, filed a general denial as to all other matters and also certain special defenses.

We will first consider the special defenses, which go to the root of the action, viz :

1. They show that Powell had held the same office during several previous years, having been elected as his own successor ; that he had been a defaulter to the State in each of said years ; that the law of the State required the Auditor of Public Accounts to publish annually the names of all defaulters ; that the Auditor failed to make such publication ; that by reason thereof the fact of his previous defalcations was concealed from them, and that they signed the bond through error in ignorance of this fact, which, if they had known, would have prevented them from signing the same.

2. That under Article 171 of the Constitution the said Powell, by reason of his aforesaid defalcation, was ineligible to the office of sheriff, and that, having been elected and commissioned in violation of a constitutional prohibition, the bond is invalid and void.

These defenses are utterly unavailing. It has been so often held that sureties on the bond of an officer cannot avail themselves of laches or omissions of other officers in the performance of duties imposed by law as a ground of discharge of their own liability, and that the ineligibility or disqualification of their principal is no defense, that a mere quotation of the precedents is an all-sufficient disposition of those defenses. Board vs. Judice, 39 Ann. 896; St. Helena vs. Burton, 35 Ann. 521; Board vs. Brown, 33 Ann. 683; State vs. Blohm, 26 Ann. 538; Mayor vs. Merritt, 27 Ann. 568; State vs. Breed, 10 Ann. 491; State vs. Dunn, 11 Ann. 549; State vs. Hayes, 7 Ann. 118; Duncan vs. State, id. 377; Mayor vs. Blache, 6 La. 500.

The case last cited learnedly and scientifically disposes of the defense of error, based on concealment or failure to give notice of prior defalcations.

The State's claim is based upon, and sustained by, certified extracts from the books of the auditor of public accounts. The admissibility and sufficiency of such evidence are disputed by defendants; but it is well settled that they are official records, kept under requirements of law, and as such are admissible and furnish full *prima facie* proof. State vs. Masters, 26 Ann. 268; State vs. McDonnell, 12 Ann. 741.

It is even expressly provided by law that such certified statements shall be held sufficient evidence for the finding of an indictment against a delinquent tax collector and "shall be read in evidence against the accused on the trial of the case." Act No. 107 of 1884, sec. 11.

As to the nature and effect of these statements, the Court has said: "The process of computing debits and credits on a tax collector's account is very simple. He is charged with the sum total of the rolls and of the licenses, and it is for him to offset these by legal vouchers for legal payments and by a delinquent list in due form. The tax collector is presumed to have collected all that is on his roll and his number of licenses, and if he does not settle by a given day, he is a defaulter *ipso facto*. Everything is presumed against him. He is *prima facie* liable for the whole amount of the assessment roll, and the *onus* of proof is upon him to show discharge, payment," etc. Police Jury vs. Brookshier, 31 Ann. 736; State vs. Guilbeau, 37 Ann.

718; Vermillion vs. Comeau, 10 Ann. 695; Scarborough vs. Stevens, 3 Rob. 147.

The defendants have failed to furnish any legal vouchers whatever to show any offsets.

They set up that in February, 1885, Powell made large payments to the State treasurer, which they claim were made out of moneys collected from the taxes and licenses of 1884, and they produce the treasurer's receipts. These receipts show a certain amount paid on account of taxes and licenses of 1884, which credits are duly entered and allowed in the auditor's certified accounts herein sued on. The balance of the payments are expressly imputed by the receipts themselves to taxes and dues of previous years. How can defendants contradict the receipts offered in evidence by themselves, and of what avail would such contradiction be? The payments so imputed operated a discharge of the dues to which they are imputed, and how can they have the double effect of discharging others to an equal amount?

This Court has expressly held that sureties are not released because the collections covered by their bond have been paid by the sheriff into the treasury on his account for a preceding year.

" The disposition of it alleged by the defendants," says the Court, " was as much a misappropriation as if he had used it in the payment of his private debts." State vs. Hayes, 7 Ann. 121.

The defendants further allege that the blank licenses, with which Powell was charged to the amount of $5592.50, were never used by him, but were turned over by his deputy to his successor in office—I C. Bass—for which sum they claim credit. The only word of evidence in the record with regard to this important allegation is this statement by Bass as a witness: " T. J. Powell was in charge as deputy when I took possession. He turned over to me in blank State licenses for the year 1885, $5592."

There is nothing to show that this turning over was ever reported to the auditor; that Bass was ever charged with them; what he did with them, whether he disposed of or accounted for them. If they had been returned to the auditor, or charged to Bass, or otherwise accounted for to the State in any manner, the auditor's books would show it, and that was the source to which defendants should have looked for proof that this valid charge against their principal had been legally accounted for. Not only have they failed to bring such proof, but they have not even produced the blank licenses, which, for aught that appears, may have been used and never accounted for to the

State. It was to the State that Powell was bound to account, and he failed to do so. When he absconded, the law provided that "his sureties shall be authorized to take into their hands the list of taxes remaining unpaid and hold the same until his successor is appointed and qualified, when *the sureties shall immediately make a final settlement with the auditor as provided by law.*" Act 119 of 1882, sec. 83. They have failed to make this settlement, and cannot dispute the indebtedness as charged on the auditor's books upon such utterly insufficient evidence.

The same reasons apply to reject their claims to credits on account of taxes collected and property adjudicated to the State for taxes of 1884, by the successor, Bass. There is no proof that the State received any account of these collections from any source, and it is to the State that the account is due.

If it be true that the State recovers by our judgment more than she is entitled to, she is the fountain of justice and defendants may find relief by application to the other departments of her government; but we must hold that they have failed to establish these offsets by any competent evidence.

We find in the record an admission that defendants are entitled to credits on the amount claimed in the sums $78 and $65, and shall allow them.

## II.

One of the sureties, Mrs. Steinhardt, interposes a denial of her liability on the bond, because her name as surety thereon was signed by an agent without legal authority. The power of attorney, under which the agent acted, is the broadest and most complete that could be imagined. It seems to have been framed to confer upon the agent not only every possible general power, but to confer expressly and specially every power for the exercise of which the Code requires that the authority shall be express and special. One has only to read it with the articles of the Code before him to discover that it was drawn with direct reference thereto and with the plain intention of conferring upon the agent every possible power, in manner and form, as the Code provides.

We make the following extract from the powers granted: "To draw, endorse or accept bills of exchange, promissory notes or bank checks; to bind the said appearer upon or to *any bond*, obligation, contract or agreement whatsoever, either as principal or as surety thereto or thereon, and to sign the same for her and in her name, either as such principal or *surety*, as the case may be."

Her counsel quotes Copley vs. Flint, 6 Rob. 56. In that case the power granted was to make and endorse notes, drafts, etc., and the Court held that such a power did not include authority to bind the principal as surety to a contract, saying: "An authority to endorse notes or drafts is different from one to bind the constituent as surety *in solido.*" Considering that the power to bind as surety is not mentioned among the acts specially noted in C. C. 2997, but is only included under the general final clause thereof, it seems clear that this mandate was drawn especialy to meet the ruling in Copley vs. Flint by adding the special power to bind as surety. We have considered all the other authorities quoted, but none of them meet the exigencies of this case.

An express and special power to bind the constituent as surety on "*any bond whatsoever*," is an express and special authority to bind her on this particular bond. The contention that the term *special*, as used in the Code, requires a special authority for each particular act is unreasonable and unsupported by any authority, and would defeat the purposes of mandates, since, if the constituent were required to grant a new authority for each particular act, he might, with less inconvenience, perform the act himself.

If her agent has abused the trust confided in him, she, being *sui juris*, deliberately invested him with the power, and it is just that she should bear the loss rather than the State, which accepted his action under her express and special mandate.

In framing the decree we shall follow the precedent in Teutonia Bank vs. Wagner, 33 Ann. 732.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and it is now adjudged and decreed that the State of Louisiana have and recover judgment against the defendants severally, to wit: Fred G. Bernard, Wm. D. Bell, Nathaniel Houghton, Jason Hamilton, Frank D. Rago, Victor M. Purdy, Oliver M. Cherry, Zachariah Goldenburg, Alfred Lewis, John W. Montgomery, and Mrs. Henrietta Steinhardt, in the sum of $15,818.92, with five per cent per month interest thereon from September 25, 1885, less any amount that may have been collected under the judgment against the succession of M. S. Powell; the said judgment to be operative against said defendants Bernard, Bell and Houghton up to the sum of $1000 each and no more; against Hamilton and Rago up to the sum of $500 each and no more; against Purdy, Cherry, Goldenburg and Lewis up to the sum of $2000 each and no more; against the said Montgomery up to the sum of $3000 and no-

more; and against Mrs. Henrietta Steinhardt up to the sum of $5000 and no more—with the stipulation that there shall be but one satisfaction of the entire amount due plaintiff, defendants and appellees to pay costs in both courts.