## No. 6713.

TEUTONIA NATIONAL BANK vs. J. M. WAGNER ET AL.

A document annexed to and made part of the Petition, controls the allegations thereof, in case of variance.

The sureties of the cashier of a bank who, in the very bond signed by them, recognized the legal existence of that corporation, are estopped from denying that the bank had such legal existence at the date of the bond.

The sureties on such bond, though bound *in solido* with the principal, are *several* obligors *inter sese,* if the solidarity *between themselves* is not expressed. They are bound by distinct and separate contracts, though such contracts are evidenced by only one act, the bond. Therefore, the discharge of one of the sureties by the common creditor does not release the other sureties.

The sureties of a bank officer are liable, not only for the acts done by him by virtue of his office, but also for those done under color or by means of his office.

APPEAL from the Fifth District Court, parish of Orleans. *Rogers, J.*

---

*Kennard, Howe & Prentiss* for Plaintiff and Appellee:

Where a bond is given by a cashier of a bank, with sureties who are each bound for a separate amount, and the bond contains a promise on the part of the principal and sureties to pay said amounts to the President and Directors of the bank, and also recites that if the principal faithfully perform his duties as cashier, the bond is to be void, but otherwise of full force and effect, such bond is, in legal intendment, in favor of the bank, and the bank can maintain an action upon it.

Such a bond is an obligation to pay money, on a certain contingency; the condition is a suspensive one.

Although each surety on such a bond is bound *in solido* with the principal up to a certain amount, yet the obligations of the sureties towards the bank, and among themselves, are several.

The alteration made in such a bond, by which the name of one of the sureties is canceled, does not discharge the other sureties.

The discharge of one of the sureties on such a bond, does not affect the liability of the other sureties.

In such a contract there is no contribution between the sureties. The obligation of each is as distinct as if evidenced by a separate agreement. An alteration or change in the contract of one of the sureties is not an alteration or change in the contract of the others.

The facts of the case discussed, with a view to showing that the sureties are not discharged by any laches on the part of the bank.

The sureties are estopped from denying any of the recitals in the bond, which they have signed.

The sureties are responsible to the bank, not only for the amounts for which the cashier has become liable by virtue of his office, but also for the losses occasioned by him to the bank, under color of or by means of his office as cashier.

*T. Wharton Collens, E. Howard McCaleb* and *E. W. Huntington* for Defendants and Appellants.

---

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is a suit to enforce the liability of J. M. Wagner as *cashier,* and of the other defendants as *sureties* on his bond, given in that capacity.

The claim was originally for $7123 47, but, upon the discovery of certain credits, it was reduced to $5878 62, amount of alleged defalcations. The main defendant, Wagner, was not found and made no appearance.

The sureties, at first, pleaded by exceptions, that the petition disclosed no cause of action and that the bond was not furnished in favor of the plaintiff. Those preliminary defenses having been overruled, they pleaded the general issue; but specially, that the bond declared upon, had been altered, after signature, without their consent and that, by the acts of the plaintiff, in discharging three of their co-sureties and, in proving derelict to duty, they have been discharged from all responsibility.

After hearing, the lower court gave judgment for the plaintiff for $4570 75 with interest and costs against *five* of the eight sureties, but only up to the amount for which they had respectively signed the bond.

Two of the sureties thus condemned, have appeald from the judgment so rendered: William Bogel and Ed. F. Stockmeyer.

The plaintiff has filed in this Court an answer, asking that an item of $1307 87, not allowed by the lower court, be here decreed in their favor.

The Bank has not appealed from the judgment of *nonsuit*, as concerns Oertling.

The exception of no cause of action was properly overruled. It is evident that, had the allegations of the petition been proved, on a confirmation of default, the judgment could not have been reversed on appeal. For the purpose of the exception, they had to be taken for true.

The petition does not set forth that the defendants are liable *in solido* to the Bank as co-debtors; but distinctly, that they are each so responsible *with* Wagner. In explanation, and for greater certainty, there is annexed a copy of the bond, as part of the petition. The bond controls the allegations. 27 An. 224; 18 An. 680; 7 An. 295; 6 L. 276; 14 L. 368; 1 R. 469.

The other defense was likewise properly overruled. On its face, the bond, copy of which had been attached to the petition, showed that it was given, in as many words, in favor of the plaintiff in the present action, and that Wagner, the principal, was then *cashier* elect.

That the Bank was not in being at the date of the bond, was not a defense susceptible of being set up by the defendants, who had in the very bond recognized its existence as a living corporation. 28 An. 736; 2 N. S. 672, 678; 10 An. 491; 11 Otto, 192.

The Bank had been organized and existed at the time. It was ready for business, although the authority required to commence such had not yet been received. U. S. R. S. 5133, 5138, 5144, 5168, 5169.

## ON THE MERITS.

The evidence clearly establishes the defalcations charged against Wagner.

The *first* item is for the amount of Wagner's overdraft in foreign exchange, viz: $3577 23, which the judgment of the lower court allowed. The total of florins is only 6793 85 and not 7154 25, as stated in the account. Calculated at 50 cents, the amount to be allowed, should be $3396 92 only.

The *second* item, for $128 52, is also proved.

The *third* item, for $865, for overdrafts on the cashier's account, is likewise established.

The *fourth* item, for $1307 87, is shown to be for ten checks which Wagner drew on the Bank, without authority and in the name of David Goodman, a depositor.

The appellants do not appear to dispute the liability of Wagner for those sums, which aggregate $5698 31; but they contend that they are not liable in any manner for the same to the plaintiff for the reasons, that the bond was tampered with, without their knowledge or assent; that one of the original sureties therein, Charles Pothoff, was discharged, and another one, Henry Oertling, was substituted to him; that two other sureties, L. Stein and Louis Schwarz, were afterwards discharged, all without reserve; and that, hence they themselves have been released from all responsibility in the premises as sureties.

The whole defense rests on the theory that the bond furnished by Wagner is a joint and solidary obligation, binding alike the principal and the sureties therein, *to do the same thing.*

We do not so construe the bond. It is, on its face, a *several* obligation. It may be joint and solidary, as between the principal and each surety separately, up to the amount of the latter's liability; but it is not such between the principal and the sureties all together, for the aggregate of the sums specified by them.

"There is an obligation *in solido*, on the part of the DEBTORS, when they are all obliged *to the same thing,* so that each may be compelled for the whole, and when the payment which is made by one of them exonerates the others toward the creditor."

"The obligation may be *in solido*, although one of the debtors be obliged differently from the other, to the payment of *one and the same thing.*" R. C. C. 2091, 2092.

"Where there are more than one obligor or obligee named in the contract, the obligation it may produce, may be either several or joint, or *in solido*, both as regards the obligor and the obligee." R. C. C. 2077.

"Several obligations are produced, when what is promised by one

of the obligors is not promised by the others, but each one promises separately for himself to do a distinct act; such obligations, although they may be contained in the same contract, are considered as much individual and distinct as if they had been in different contracts and made at different times." R. C. C. 2078.

"When several persons join in the same contract, *to do the same thing*, it produces a joint obligation on the part of the obligors." R. C. C. 2080.

It is not until persons who obligate themselves to the obligee, do so by using the terms *in solido*, or other expressions which clearly show that they intend that each one shall be separately bound to perform the whole of the obligation, that it can be called a solidary obligation on the part of the obligors. R. C. C. 2082; 12 R. 183; 15 An. 158; 21 An. 127.

"*Where several obligations are created by one act, they have no other effects than the same obligations would have had if made by separate contracts, and they are, therefore, to be governed by the rules which apply to all contracts in general.*" R. C. C. 2084; 14 An. 828; 23 An. 413.

It is manifest that the bond in this case nowhere contains the words "*in solido*" or others equivalent thereto, so as to make the sureties therein liable solidarily with the principal *to the same thing*, in its entirety, to the obligee, the plaintiff in this case. The obligations are *severable and can be severed*, so as to stand each on its own bottom.

"An obligation *in solido* is not presumed, it must be expressly stipulated." R. C. C. 3039.

"Suretyship may be contracted for a part of the debt only, or under more favorable conditions." R. C. C. 3037.

The obligation of the principal was one thing, and the obligation of the sureties, *among themselves*, as conditional debtors, was another thing.

The principal, *as such*, bound himself to the Bank to the same extent as the sureties themselves agreed to be responsible, but they undertook, severally, to be liable, *with him*, only to the extent or amount which each specified in the bond as the *maximum* of his responsibility, regardless of the independent liability assumed by others, each binding himself alone. The sureties did not bind themselves *together*, jointly and severally, the one in default of the other, each one for the whole, of the entire liability of the principal. Each merely said: should the principal fail in his duties and wrong the obligee, I will repair the damage, to the extent of *such* an amount, which each specified. No liability, judicially liquidated against the principal, could be enforced against each of the sureties, beyond the amount for which each agreed to, and did bind himself.

The case stands just as though eight different bonds, or different papers, containing no reference the one to the other, had been furnished to the Bank.

The District Judge well observed: "The sureties have stipulated and determined the extent of their liability, not for the full amount of the bond, nor for equal portions, but in certain determined and specified amounts, some for greater amounts than the others. No matter how extensive the defalcation in excess of the amounts for which they bound themselves, they could not be held responsible," (i. e. for the *surplus*.)

We, therefore, conclude that, although the sureties have stipulated and bound themselves in the same act, they must be considered as having bound themselves each one separately by independent contracts, evidenced by distinct acts. R. C. C. 2078, 2084; 2 R. 538; 10 R. 14; 3 An. 162; 11 An. 327; 14 An. 828; 23 An. 413; 31 An. 301, 738; 12 O. St. 577; Duranton, v. 12, Arts. 358, 473; Toull. 7, 331; Larombiere, 3, p. 611.

If, then, the sureties are not bound *in solido*, what becomes of their defense, that the discharge of one or more of them without reserve, and that the alteration of the bond, as to Oertling, have released them from all responsibility?

We do not propose to discuss the position assumed by the appellants in this regard. The statement of the proposition carries its refutation.

In 8 English Common Law Reports (1 Barnwell & Cresswell), p. 287-290 (Collins vs. Prosser), we find that, in a suit on a bond, whereby sureties had acknowledged themselves held and bound to the plaintiffs, in 1000*l.* each, for which they bound themselves and each of them for himself, for the whole and entire sum of 1000*l.* each, subject to a condition that the principal should render a true account of all monies received by him, as treasurer of a certain county, it was held; that this was a *several* bond only, and that the obligees, by removing the *seal* of one obligor, did not render it void as to the others. See, also, 10 R. 14; 12 Ohio St. 577; 3 An. 162; R. C. C. 2078, 2084; 7 Toull., Art. 331; C. N. 1285, 1287; 11 An. 327.

The theories advanced by the defendants and the authorities quoted in support, are applicable to cases in which each party was bound for the entirety of the same thing. Burge on Suretyship, pp. 385, 164, 407; 17 An. 118.

From that standpoint, the Bank had a right to do that which it did, and it did not thereby discharge the appellants or either of them.

Owing to the failure of the Bank to appeal from the judgment as to Oertling, who was substituted to Chs. Pothoff, we are unable to revise the ruling in that respect.

But the Bank has prayed that the judgment of the lower court be amended by allowing her the overdrafts on Goodman's account.

The evidence satisfies us that Wagner used his official position for the purpose of those unwarranted overdrafts.

On the assumption that Goodman himself had overdrawn his ac-

count, it is clear that, as Wagner knew of it and permitted it, he and his sureties became responsible for loss sustained by the Bank.

The sureties of an officer are liable, not only for the acts done by him by virtue of his office, but also for those done under color or by means of the office which he holds. 29 An. 82, 86; Burge on Suretyship, p. 49.

Appellant, Bogel, signed the bond for *ten* thousand dollars, and appellant, Stockmeyer, bound himself therein for *five* thousand dollars.

We find that the plaintiff is entitled to an amendment of the judgment by enlargement, to the extent of the Goodman overdrafts, viz: $1307 87; and that the appellants are entitled to a reduction of the item of $3577 23, to $3396 92; and that the plaintiff should, therefore, recover $5698 31, with the condition that there should be but *one* satisfaction.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended by allowing plaintiff to recover five thousand six hundred and ninety-eight dollars and thirty-one cents ($5698 31) with legal interest from January 26th, 1874, per annum, till paid, from the appellants severally: William Bogel up to ten thousand dollars ($10,000) and no more, and Edward F. Stockmeyer up to five thousand dollars ($5000) and no more, with the stipulation that there shall be but one satisfaction, and that, thus amended, said judgment, as to appellants, be affirmed.

It is further ordered that the appellants pay costs in both courts.