## No. 12,611.

### RILEY Y. WOODLIEF vs. GEORGE C. LOGAN, ET ALS.

#### SYLLABUS.

A judgment having been rendered against several defendants, from which some of them appeal, suspensively, and others instituted an action of nullity— HELD, that the judgment annulling the decree having been rendered by this court, it should postpone action on the appeal from the judgment, until further proceedings are deemed necessary and appropriate.

Notwithstanding a sub-contract for the transportation of the United States mail stipulates a fixed sum as liquidated damages for failure to perform the service required, same must be sued upon specifically and in terms, otherwise it can not be made the basis of a judgment in damages.

Goldman vs. Goldman, 25 So. Rep., 556.

In case a sub-contractor abandons his engagement and gives notice to the postal department of his discontinuance of the service, and the original contractor resumes service under his original contract with the government, same can not be considered as a renewal of the sub-contract in any sense.

In the sub-contract the original contractor was a mere intermediary without any power or control. All that the contractor can claim of the defaulting sub-contractor is that he shall protect him from actual loss and replace him in his original situation.

ON APPEAL from the Civil District Court for the Parish of Orleans, *Righter, J.*

---

*Rice and Montgomery* for Plaintiff and Appellee.

---

*W. B. Sommerville* for Defendants and Appellants.

Argued and submitted January 26, 1898.

Order directing stay of proceedings May 30, 1898.

Opinion handed down June 12, 1899.

Decree amended and rehearing refused June 26, 1899.

On the application for rehearing on the merits by BLANCHARD, J

The opinion of the court was delivered by

WATKINS, J. Plaintiff sued George C. Logan and his sureties on a sub-contract, made for carrying the United States mails; and from an adverse judgment, some of the sureties have appealed. It is that appeal which is presented in this transcript.

One of the sureties on George C. Logan's contract was the late Dr. Samuel Logan, and his heirs were made parties to this suit; and instead of appealing from the judgment, they instituted an action of nullity and sought to annul it—at the same time enjoining the execution thereof.

That suit was tried, and judgment rendered in defendants' favor, and the plaintiffs in injunction appealed.

That suit is of the same title as the instant one, but the docket number thereof is 12,713. That case has been this day decided, and the judgment appealed from, reversed and remanded.

In our judgment, the instant case is so circumstanced, that further proceedings therein should be halted, until action in the premises is deemed necessary and appropriate.

And it is so ordered.

The foregoing decree was rendered on May 30, 1898.

The aforesaid suit of same title, No. 12,713, was brought by the heirs of Logan to annul a judgment, because same had not been read and signed by the judge of the lower court; and from a judgment dissolving the injunction therein, the plaintiffs appealed, and in this court the judgment was reversed and the cause remanded, to be proceeded with according to law. (50th Ann., 438.)

The present case of same title, number 12,611, of which the proceeding in the case, No. 12,713, was a branch, by the aforesaid decree of this court was suspended, until action in the premises should be deemed necessary and appropriate.

That decree was entered on May 30th, 1898, and, in that condition, same has remained on the docket of this court undisposed of.

When suit 12,713 went back to the District Court, it was sub-

mitted upon the pleadings and evidence on file, and decided in favor of the plaintiff, and judgment was signed on June 20, 1896—same being in terms similar to those of the original judgment, which is the subject of the present appeal.

Disembarrassed of the multifarious issues and proceedings referred to *supra*, this appeal is the only one before the court on its merits—the judgment in 12,954 being merely ancillary thereto, and the determination of the appeal of the Logan heirs therein, appertaining exclusively to their standing in court.

Consequently, the two cases, entitled Riley Y. Woodlief vs. George C. Logan, *et als.*, No. 12,611, and that of same title, 12,954, will be taken as one and the same case—as they were originally, and as they have been since made by the orders of the District Court and of this court.

The claim made by the plaintiff in the instant case, is as follows:

That on January 7th, 1890, he entered into a written contract with the United States, through the postmaster general, for transporting the mails on route No. 49,101—it being "the covered regulation "wagon, mail, messenger, transfer and mail station service at the City "of New Orleans, and any new or additional service of any kind which "might at any time during the term of said contract, to-wit: from "the 1st day of July, 1890, to the 30th day of June, 1894, be re-"quired."

That the terms and conditions of the contract, which are annexed to and made a part of the petition, are alleged to be fully set forth therein, especially as to wagons or means for transportation of the mails, the nature and extent of the services to be performed, the duties undertaken, and the liabilities and penalties imposed upon the petitioner. The petition alleges, that among the terms and conditions it is provided, that said mails shall be transported wholly in two horse and other covered wagons, constructed and repaired as therein described; that petitioner should take the mail from, and deliver it into the postoffice, mail stations and cars, at such points, and at such hours, under the direction of the postmaster at New Orleans, approved by the postmaster general, as would secure dispatch in making connections, and facilitate distribution, and at petitioner's expense for tolls and ferriages; that he shall furnish such a number of wagons as should be deemed sufficient by the postmaster; that he should be answerable in damages to the United States, or any person aggrieved for the faithful

performance of all the duties and obligations of said contract, and for the careful and faithful conduct of persons employed by him, and to whom he should confide the care and transportation of said mails, and for the faithful performance of the duties then, or which might be imposed upon such persons in the care and transportation of said mails.

That said contract, among other things, also provided, that for failure to comply with any of the obligations thereof, as well as for sundry delinquencies mentioned therein, your petitioner should forfeit, and there might be withheld from his pay thereunder, such sums as the postmaster general might impose as fines and deductions, according to the nature and frequency of such failures and delinquencies; and that the postmaster general might annul said contract for such repeated failures, and for violating the postal laws; and that such annulment should not impair the right of the United States to claim damages from petitioner; and that said contract should be subject to all the conditions imposed by law, and the several acts of congress relating to post offices and post roads.

Petitioner further avers, that on the ——— day of April, 1890, he entered into a so-called sub-contract with George C. Logan, of the City of New Orleans, a duplicate of which contract is hereto annexed as part of the petition herein, and having taken cognizance of the contract herein first mentioned, the said Logan obligated himself to perform the duties imposed by the United States government on your petitioner, and in his place and stead, and in full compliance with the postal laws and regulations, and subject to all the requirements of your petitioner under his contract aforesaid, for the consideration of $4593 *per annum,* payable quarterly in the months of November, February, May and October of each year.

He further shows that Samuel Logan, Alexander Hill, Winnfield W. Gauche and Alfred A. Woods, all of the City of New Orleans, by the terms of the contract last described, "undertook, covenanted and agreed as sureties of said George C. Logan, and bound themselves, each, for the separate sum of $2500, for his faithful compliance with all the terms and conditions of said contract.

"That in said contract it is specially provided that said contractor and his said sureties shall forfeit of the sum so aforesaid stipulated to be paid, among other causes, on account of trips not run, or failure to carry the mails, not exceeding three times the pay of the trip; for

failing to deliver the mail in time for the connection with the departing mail, at least one-fourth the pay of the trip; for loss or depredation upon a mail pouch in his custody, not to exceed one and one-fourth times the value of the contents lost thereby.

Plaintiff alleges that Logan entered upon and continued in the performance of said contract, until the 30th of June, 1891, when he, without legal or proper cause, abandoned the same, and declared he would no longer continue in the performance thereof; and, thereupon, your petitioner, in order to prevent greater loss and damage, and to comply with his contract as aforesaid, with the United States, was compelled to resume its performance, and did so as soon thereafter as he was able to procure requisite equipment, and transport the same to the City of New Orleans, that is, on or about the 15th of September, 1891.

"That, in the meantime, the proper authorities of the United States had provided, at the cost and expense of petitioner and according to law, for the temporary performance of the contract, by said Logan so abandoned, and said temporary service was continued until the resumption by petitioner as aforesaid.

"Petitioner shows that by the failure and abandonment as aforesaid of said contract, by said George C. Logan, he was put to great personal inconvenience, damage, cost, loss and expense in providing for and maintaining a suitable equipment for performing the duties undertaken by said Logan, up to the 30th day of June, 1894, in the employment of the necessary help and assistance for such performance.

"That there was deducted as forfeited from the sums due your petitioner, under his said contract on account of loss or depredation upon the mail, on said —— day of April, 1891, during the term of said contract with said Logan, and for which amount he was and is liable thereunder, the full sum of $2548.64—for all of which sums aggregating the full amount of $26,077.82, less the sum of $12,779.00, the price to be paid said Logan from the date of the abandonment of said contract to the end thereof, as fully set forth in exhibits, 'A, B, C, D and E,' hereto annexed as part of this petition; and the said George C. Logan is liable to petitioner, and said sureties are, also liable, each for the sum of $2500.00."

Petitioner alleges that since the execution of said contract with George C. Logan, Samuel Logan, one of the sureties has died, leaving

several heirs who are named, and whom he requests to be made parties defendant.

The prayer of plaintiff's petition is, that he have and recover judgment against George C. Logan in the sum of $12,298.88, and against each of the sureties upon his contract in the sum of $2500.00.

*In limine*, an exception of no cause of action was filed on the part of defendants, and same was, by the court, overruled.

For answer, the defendants. George C. Logan, James D. Hill, Mrs. Linzay B. Hill. and Alfred A. Woods, plead the general issue, and admitted that they entered into the contract attached to the petition, but they especially denied that they were in default in the execution of the same, or that plaintiff ever put them in default in any manner whatever.

That they were in active and full discharge of the obligations entered into under said contract. when the plaintiff violently interfered and dispossessed them without any cause whatever.

That they protested against the action of the plaintiff, but he refused to permit them to continue in the discharge of the duties thereunder. That if plaintiff has suffered any loss or damages whatever, it was entirely through his own fault. and not the fault of the defendant, George C. Logan.

Further answering, defendants alleged that if plaintiff has suffered any damage. his demand therefor has been prescribed by the lapse of one and five years. and that they plead the prescription of one and five years in bar of plaintiff's demand.

The heirs of Logan, for answer, plead a general denial, and admit that George C. Logan entered into the contract sued upon, and that the same was signed by their ancestor, the late Samuel Logan, as surety, as therein expressed. In other respects. the answer is similar to that of the other defendants.

It appears from the record that a trial *in extenso* was had upon the foregoing issues, and that the cause was submitted on the 15th of June, 1897, and on the 18th of June, following, judgment was rendered in favor of the plaintiff. which is of the following tenor.

(1) Against George C. Logan in the sum of ten thousand dollars, with legal interest from judicial demand; (2) against A. A. Woods, in the sum of twenty-five hundred dollars with like interest; (3) against the surviving widow of Alexander Hill, and against James D. Hill, his sole heir, in the sum of $1250.00; (4) against the Logan

heirs, five in number, for the sum of $357.14 each; (5) and against all the defendants *in solido* for costs.

In this court the appellee asks that the judgment be increased so as to make both Alexander Hill, and Mrs. Lindzay Hill, liable for $1250.00, each.

## I.

Our learned brother of the lower court made no statement of the reasons which impelled him to render said judgment, and, consequently, this court is not advised of the theory upon which same is predicated, but, judging from the tenor of the argument of plaintiff's counsel in his brief, he must have entertained the view that the liquidated damages specified in the contract were sought to be enforced; and, accordingly rendered judgment.

The sub-contract of George C. Logan, amongst other things, provides, to-wit:

"And it is hereby further agreed, that in case of failure or refusal "by the party of the second part, to perform the mail service herein "provided for, then the sum hereinbefore stipulated shall become im- "mediately due to the party of the first part, as liquidated damages, "and not as a penalty, and, in default of payment thereof, may be "recovered in an action of debt."

It further stipulates, "that the said party of the second part, and "his sureties aforesaid, do severally undertake, covenant and agree, "and do bind themselves to and with said party of the first part, in "the sum of ten thousand dollars"—the sureties binding themselves in the several sums named—"to transport the United States mails "on the said route No. 49,101, etc."

While it is true that the petition alleges that a duplicate of the sub-contract is thereto annexed as a part thereof, yet, no judgment is sought thereon, as it contains the distinct averment that "by the failure and abandonment as aforesaid, of his said contract, by George C. Logan, petitioner was put to great personal inconvenience, damage, cost, loss and expense, in providing for and maintaining a suitable equipment for performing the duties undertaken by said Logan, up to the 30th day of June, 1894, in the employment of the necessary help and assistance for such performance, etc.,  *  *  * for all of which sums, aggregating the full sum of $26,077.82, less $13,779.90, the price to be paid said Logan from the date of the abandonment of said contract to the end thereof, as fully set forth

in the exhibits A, B, C, D and E, hereto annexed as parts of this petition, the said George C. Logan is liable to your petitioners, and the said sureties are, also, liable, each, for the sum of $2500.00."

And, upon this allegation, his prayer for judgement is for twelve thousand, two hundred and ninety-eight dollars and eighty-eight cents, against George C. Logan as principal, and against each of the sureties for their said respective shares thereof, the $10,000 principal.

Referring to the said exhibits, we find that the one marked "A." styled "Equipment Account" foots up the total sum of three thousand, six hundred and ninety-eight dollars and eighty-four cents, and includes such items as horses, mules, gear, wagons, mail locks, horse brushes, curry combs, etc., embracing the dates July 1, 1891, to May 31, 1894.

But on this exhibit, defendant is given credit for two thousand, eight hundred and fifteen dollars, leaving a balance of eight hundred and eighty-three dollars and eighty-four cents.

The one marked "B" is styled a "Pay Roll Account," and foots up ten thousand, four hundred and sixty-two dollars and twenty-eight cents.

The one marked exhibit "C" is a food account, and foots up three thousand, one hundred and forty-nine dollars and ninety-two cents, embracing the items of bran, corn, hay, meal, oats, etc., for each of the months between September, 1891, and June, 1894.

The one marked "D" is a shoeing account, and foots up five hundred and twenty-one dollars and forty cents, and embraces expenses of shoeing horses for each month, from September, 1891, to June, 1894.

The one marked exhibit "E" is an expense account, and foots up eleven thousand and sixty dollars and thirty-eight cents ($11,060.38), upon which are extended sundry items of expense, such as telegrams, wagon repairs, insurance, freight, water tax, gas deposit, hauling and storing wagons, repairing gas pipe, room rent, gas, axle grease, castile soap, drayage—subject to sundry credits for damages, fines remitted. stable rent, etc., amounting to one thousand eight hundred and eighty-eight dollars and thirty-seven cents, leaving a balance of nine thousand, one hundred and seventy-two dollars and one cent.

These various amounts aggregate the total sum of twenty-eight thousand, eight hundred and ninety-two dollars and eighty-two cents. and represent sundry small items of debit, extending through the

entire period of three years from September, 1891, to June, 1894, during which time plaintiff operated his contract with the government. From that sum the petitioner deducted thirteen thousand, seven hundred and seventy-nine dollars as the amount he had collected from the government during those three years, for Logan's account, and this sum added to the deductions previously made, ought to leave a difference of ten thousand, four hundred and ten dollars and forty-five cents, whereas plaintiff demands twelve thousand, two hundred and ninety-eight dollars and eighty-eight cents; but his petition and his prayer for judgment make claims for the sum of two thousand, five hundred and forty-eight dollars and sixty-four cents as the amount the government charged him for depredation upon the mails, while the contract was operated by the defendant, Logan.

These are the exhibits to which the petition refers as having been annexed to and made part thereof, and upon them judgment for damages in the way of reimbursement is prayed for.

It is to the items of these exhibits that the argument of counsel, *pro* and *con*, have been directed.

It is true that plaintiff's counsel did refer in his brief to the penal clause of the sub-contract, which liquidated the damages above referred to, of $10,000, but the only reference he makes thereto, is the following:

"These words show that the measure of damages *as to the sureties* " for the breach were fixed, otherwise they could not become immedi- " ately due, and plaintiff would have to wait till the period named in " the contract was arrived, in order *then* to determine the actual " damages."

Consequently, we think it manifest that this is a suit, as it is stated in the petition, for the plaintiff's personal inconvenience, damage, cost, loss and expense, in providing for and maintaining suitable equipment for performing the duties undertaken by said Logan up to the 30th day of June, 1894, in the employment of the necessary help and assistance for such performance, and as particularly specified in the exhibits referred to, and not for the purpose of enforcing the terms of the said clause of the sub-contract liquidating the damages.

Evidently counsel's reference to the said clause of the contract is not at all pertinent or appropriate to the relief he claims, nor to the judgment which he seeks.

The following extract from his brief, is very opposite:

"These damages are made up of expenses to which plaintiff was
" put in providing for and maintaining an equipment * * * and
" the thousand and one things necessary for the performance of the
" contract that the sub-contractor had abandoned; the transportation
" thereof to the city of New Orleans; the conduct of the contract in
" New Orleans; the wages of employees; the feeding and shoeing of
" horses, and the purchase of new ones to take the place of those in-
" capacitated or dead; the rent of a stable; the personal expenses of
" plaintiff rendered unavoidable by the default of the sub-contractor;
" of fines imposed by the department during the time when the sub-
" contractor was in possession, and *paid by plaintiff;* and the extra
" amount paid for 'temporary service' between the date of Logan's
" abandonment and Woodlief's resumption."

It is, therefore, obvious, that we must look into the claim that
plaintiff has made for damages, and see how his case stands upon the
law and evidence, entirely outside of the aforesaid clause of the con-
tract.

The case of Pradat vs. Legare, 28th Ann., 337, is a somewhat
similar case, but Goldman vs. Goldman, 25 So. Reporter, p. 556, is not
a parallel case, as it was distinctly a suit brought to enforce the
penal clause of a commutative contract.

## II.

From the contract between the plaintiff and the Postmaster
General, which is brought up in the original and annexed to the
transcript, it appears that the former was accepted as contractor for
transporting the mails on route No. 49,101, as described in the peti-
tion, and at the price of four thousand, nine hundred and forty-two
dollars *per annum*, for the period of time therein specified.

It further appears, from the contract that the specifications and par-
ticulars thereof have been fairly well reproduced in the plaintiff's
petition. The contract, amongst other things, contains the following
stipulation, to-wit:

"Now, therefore, the said contractor and his sureties do jointly and
" severally undertake, covenant and agree with the United States of
" America, and do bind themselves * * * to be accountable and
" answerable in damages to the United States, or any person
" aggrieved, for the faithful performance by said contractor of all the

Woodlief vs. Logan et als.

" duties and obligations herein assumed, or which are, or may here-
" after, be imposed upon him by law in this behalf; and, further, to be
" answerable and accountable in damages for the careful and faithful
" conduct of the person or persons who may be employed by said con-
" tractor, and to whom said contractor shall commit the care and
" transportation of the mails, and for the faithful performance of the
" duties, which are, or may be, by law imposed upon such person in
" the care and transportation of the mails."

It further appears, from said contract, that it is stipulated and
agreed, "that for the failure to deliver not beyond the control of the
" contractor, or for any delay or interference with the prompt deliv-
" ery of the mail at the postoffice, mail stations, depots, and land-
" ings, or for carrying the mail in a manner different, or inferior, to
" that hereinbefore specified, * * * or for any other delinquen-
" cies or omissions of duty under this contract, for all or any of which
" the contractor shall forfeit, and there may be withheld from his pay
" such sums as the Postmaster General may impose as fines or deduc-
" tions, according to the nature and frequency of the failure or delin-
" quency."

This contract was signed by the plaintiff on the 25th day of
January, 1890, and duly accepted by the Postmaster General.

On the 21st of May, 1890, the plaintiff entered into an agreement
with George C. Logan, as sub-contractor, the stipulations of which
are as follows, to-wit:

"That R. Y. Woodlief, of St. Louis, Missouri, contractor with the
" United States, party of the first part, and George C. Logan, of New
" Orleans, State of Louisiana, sub-contractor, party of the second
" part, and Samuel A. Logan, M. D., Alexander Hill, Winnfield W.
" Gauche, and Alfred A. Woods, of New Orleans, Louisiana, as
" sureties:

"WITNESSETH: That, whereas the said party of the first part has
" executed a contract with the United States (acting in this behalf
" by the Postmaster General) according to law, for transporting the
" mail on route 49,101, City of New Orleans, State of Louisiana, from
" July 1, 1890, to June 30, 1894, on a schedule satisfactory to the
" postoffice department, and having obtained conditional permission
" to sub-let the same, has made the following agreement with the
" party of the second part, to-wit:

"The said party of the second part, and his sureties aforesaid, do

" severally undertake, covenant and agree, and do bind themselves to,
" and with said party of the first part, in the sum of ten thousand
" dollars, as follows, to-wit:

"Samuel Logan, M. D. ........................................$2,500 00
"Alexander Hill ..................................... 2,500 00
"Winnfield W. Gauche ........................... ..... 2,500 00
"Alfred A. Woods .................................. 2,500 00

"To transport the United States mail on the said route No. 49,101
"on the 1st day of July, 1890, to June 30th, 1894, inclusive, on the
" schedule hereto appended, or upon such schedule as the Postmaster
" General may direct, and in full compliance with the postal laws and
" regulations, and subject to all the requirements of the said party of
" the first part, under the said contract with the. United States, for
" forty-five hundred and ninety-three dollars ($4,593.00) *per annum.*

*        *        *        *        *        *        *        *

. "And it is hereby further agreed that liability for all fines and
" deductions imposed upon the party of the first part, by the Post-
" master General, for failures and delinquencies in the performance
" of service under his contract, shall be assumed and borne by the
" party of the second part, and, if necessary, the Auditor of the
" Treasury, for the Postoffice Department, may enforce this agree-
" ment by proper deductions from any compensation due the party
" of the second part for services performed under this sub-contract.

"And it is hereby further agreed that for any additional services
" required by the Postmaster General, and not heretofore expressly
" stipulated, and for which the party of the first part may receive
" extra pay, the party of the second part shall be allowed not to
" exceed a *pro rata* increase of compensation; and in case of discon-
" tinuance of service, as full indemnity, a *pro rata* of the one month's
" extra pay allowed by the United States to the party of the first
part."

This contract was signed by the plaintiff and each one of the
aforesaid sureties, and accepted by George C. Logan, as sub-con-
tractor.

Taking the statement of plaintiff's claim for damages, as announced
in his petition, and accompanying exhibits, in connection with the
recitals of the contract of Woodlief, with the government, and his
sub-contract with the defendant, Logan, the case presented to the
court is of the following tenor, to-wit:

That the defendant, Logan, entered upon the duties of his said contract on or about the 2nd day of May, 1890, and continued in the performance of same until the 30th day of June, 1891, one year and two months, when he gave written notification to the postmaster at New Orleans of his voluntary discontinuance thereof; that, immediately thereafter, the Postoffice Department provided for the temporary performance of the mail service, at his (Woodlief's) expense, until the date of his resumption thereof; and that he, in order to prevent greater loss and damage, and to comply with his contract with the United States, was compelled to resume its performance, "and did so, thereafter, on the 15th of September, 1891."

That Logan failed to carry out the contract, and his abandonment of it put him (Woodlief) "to great personal inconvenience, damage, " cost, loss and expense, in providing for and maintaining suitable " equipment for performing the duties undertaken by said Logan up " to June, 1894"; that is to say, in providing for and maintaining the mail service as it was contemplated it should have been provided and maintained by Logan during the residue of his term.

The estimate he makes of said damage, cost, loss and expense, including personal inconvenience that he suffered by reason of his providing for and maintaining suitable equipment for said service during the remainder of the term of Logan's sub-contract, between June 30, 1891, and June 30, 1894, is the sum of twenty-six thousand and seventy-seven dollars and eighty-two cents ($26,077.82) less the contract price due Logan for said period, thirteen thousand, seven hundred and seventy-nine dollars—making the difference claimed twelve thousand, two hundred and seventy-eight dollars and eighty-eight cents—same to include the amount of two thousand, five hundred and forty-eight dollars and sixty-four cents, which the department had deducted from the sum due Woodlief under his contract, as having been forfeited on account of loss to and depredation upon the mails on the ...... day of April, 1891, during the period of Logan's sub-contract.

In other words, that Woodlief sustained damage, cost, loss and expense in providing for and maintaining a suitable equipment for carrying out the terms of Logan's sub-contract for and during a period of three years, the large sum of twelve thousand, two hundred and seventy-eight dollars and eighty-two cents, less the amount he had forfeited to the government, two thousand, five hundred and

forty-eight dollars and sixty-four cents; that is to say, the sum of nine thousand, seven hundred and thirty dollars and eighteen cents.

Or, to state the plaintiff's proposition differently, it is that after collecting from the government the full amount of four thousand, five hundred and ninety-three dollars *per annum*, which would have been due to Logan had he carried his contract to completion; that is to say, the full sum of thirteen thousand, seven hundred and seventy-nine dollars, he, (Woodlief), sustained an additional loss of nine thousand, seven hundred and thirty dollars and eighteen cents, independently of the sum he forfeited to the government.

That this is exclusively referrable to the failure of Logan and the abandonment by him of his contract, his counsel's statement is authority; and it is also authority for the statement that he was thereby put to great personal inconvenience, damage, cost, loss and expense, in providing for and maintaining a suitable equipment for performing the duties undertaken by said Logan up to the 30th of June, 1894, etc.

The only item of expense which originated during the tenure of Logan under his sub-contract, for which Woodlief was held responsible, is the sum of two thousand, five hundred and forty-eight dollars and sixty-four cents. That the government deducted as forfeited, in April, 1891, on account of loss or depredation upon the mails, but for that amount the plaintiff claims reimbursement, making his demand aggregate twelve thousand, two hundred and seventy-eight dollars and eighty-two cents.

There is no statement made in the petition, and none in the brief of counsel, to the effect that Logan, in any way, violated his contract, but it, on the contrary, alleges that the sole foundation of his claim is his (Logan's) abandonment of it on the 30th of June, 1891, resulting in the loss and damage stated.

Referring to the plaintiff's contract with the Postmaster General, it appears that he was, on January 25th, 1890, accepted "as contractor for transporting the mails on route No. 49,101, * * * at the City of New Orleans, Louisiana, at four thousand, nine hundred and forty-three dollars per annum for and during the term beginning on the 1st day of July, 1890, and ending June 30, 1894"; and comparing the same with the sub-contract, it appears that he contracted with the defendant Logan to perform the same service on the 2nd of May, 1890, at the price of four thousand five hundred and ninety-three

dollars *per annum;* and thus contracting with the latter to perform the service for four hundred dollars less *per annum* than he had contracted to perform it for the government. Woodlief contemplated that he would receive a net profit of sixteen hundred dollars during the **life of the contract, if same were completely carried out.**

It appears, from the sub-contract, that Logan and his sureties bound themselves in the sum stated, for the transportation of the mails by Logan on said route for the periods specified in the schedule, and in full compliance with the postal laws and regulations, and subject to all the requirements of the said party of the first part (Woodlief) under his contract with the government; he, Logan, became obligated to carry the mails in wagons of the kind described, and in sufficient numbers to transport the whole of the mail, and within the schedule time fixed therein; and in a safe and secure manner, free from wet or injury, in substantial one or two horse wagons, of sufficient capacity for the entire mail, and as otherwise particularly specified in the sub-contract.

This statement brings us to the consideration of the contract between the plaintiff, Woodlief, and the government, and that of the sub-contract of Logan, in June, 1891, when, it is alleged, that same was abandoned by him.

Plaintiff's counsel claims that the suit of George C. Logan *et als.* vs. R. Y. Woodlief, numbered 11,750 on the docket of this court, forms a part of the evidence in this suit, but this statement is disavowed by counsel for the defendants; but whether this be a fact or not, is of no material consequence, as this court is entitled to look into its own opinions, which are germaine, and ascertain any facts therein stated, or principles of law therein announced, in so far as it may consider same appropriate to any question it has under consideration.

Entertaining this theory, and having made an examination of our opinion in that case (47 Ann., 1142), we find that the parties thereto are parties to the contract and sub-contract which are the subject-matters involved in this litigation, and may, consequently, be referred to, as our opinion therein carries additional weight and force in its application to the question at issue, on that account.

In that suit plaintiffs sought to annul their sub-contract with Woodlief, and asked judgment against him sounding in damages, and a judgment rendered in the District Court, rejecting plaintiffs' demand, was affirmed by this court.

Hence, it is apparent that the views entertained and expressed with reference to the legal *status* of the sub-contract, must, necessarily, exercise a strong influence upon the determination of the issues now before us.

We glean therefrom the following pertinent facts:

That it was under the authority of an act of Congress, of date May 17, 1878, that the defendant—plaintiff here—as mail contractor, entered into a sub-contract with George C. Logan to perform the duties of the former, and that he entered into the performance of the duties thereof in July, 1890. That, in June, 1891, the sub-contractor wrote to the postmaster at New Orleans, who referred same to the Postoffice Department at Washington, to the effect that it was impossible for him to continue the services required of him, because the company who had been engaged in hauling the mail for him had gone into liquidation, and that the losses he had sustained in trying to continue the work, rendered it impossible for him to continue any longer, and that he felt compelled to discontinue the sub-contract from that day—June 30, 1891.

That the department, on the receipt of that letter, made a temporary contract with one James Reyne to take charge of the transfer of the mails on the day following.

That in July following, the defendant, Woodlief (plaintiff here), notified the department that he had been informed of plaintiff's (Logan's) abandonment of his sub-contract, and that he would immediately resume service for his own account, under his original contract, which the Postmaster General permitted him to do.

That the plaintiff (Logan) admitted having received on September 1, 1891, notice from the department of a flue that had been imposed, and that money due him was to be withheld. That, thereupon, Reyne, the temporary employee, relinquished his duties, and Woodlief took charge of the wagons, and resumed the hauling of the mail—the postmaster at New Orleans being informed of the action of the post office department.

That it is in view of these facts that plaintiff (Logan) complained that he had been dispossessed by the defendant, and prevented from continuing the services under his sub-contract.

On this state of facts, we held, that all contractors and sub-contractors, are employees of the government, and under orders of that department, and paid by the government for their services.

That they are subject to fines for non-performance of duty, and for the causes assigned in the statute, this service may be discontinued.

That contracts to carry the mails, are public contracts, and contain the terms that the statute prescribes and are binding upon contractors and sub-contractors.

Our opinion holds, that the plaintiff abandoned his contract, and had been replaced by competent authority, for cause deemed sufficient by the post office department. Our opinion then says:

"He was not dispossessed by the defendant. The dispossession "was an act of the authorized officer of the government, who, under "the statute, made arrangement for the transfer of the mail.

"Contractors and sub-contractors are the agents upon whom the "government relies for carrying the mails. They are, in many re- "spects, public agents.

"Here the plaintiff was not, truly, a sub-contractor or sub-agent "in the sense that he was to serve the contractor, exclusively, or "carry out the mandate imposed upon him by the sub-contract for "account of this contractor, only. But he was virtually *under con-* "*tract with the government, and one of its agents in the mail de-* "*partment, subject to its management and control.*

\*        \*        \*        \*        \*        \*        \*        \*

"In the matter of performance of a contract, the principle, where "the sub-contractor assumes all the duties of the contractor with "express consent and under the terms of the law, as in this case, ap- "plies.

"*The contractor (Woodlief) was a mere intermediary, to whom* "*the plaintiff (Logan) did not give any notice of his abandonment* "*of the contract.* Under the terms of his contract, the plaintiff sent "his notice of abandonment properly to the chief of the Post Office "Department, who at once acted upon plaintiff's default.

"*The aggregatio mentium between the parties concerned was com-* "*plete without the original contractor's consent. His objection or* "*consent, under the terms of the contract, would have been useless,* "* as there was no place for the one or the other.*

"*The Postoffice Department consented to the reinstatement of* "*the original contractor (Woodlief). We do not think it possible* "*to conclude from the facts of record, that the department consented* "*to the renewal of the sub-contract,* and without that consent, it was

"not left for the plaintiff (Logan) to resume service under the con-
tract abandoned by him. '

\* \* \* \* \* \* \* \*

"The carrying of the mails is an attribute of sovereignty, sur-
"rendered by the states to the general government, and subject to
"its law and regulations.

\* \* \* \* \* \* \* \*

"There is no lack of legitimate power in the general government
"to assume, as it has control, of all the contracts and sub-contracts
"for carrying the mails. It has the power, after abandonment by the
"sub-contractor, to reinstate the original contractor, without permit-
"ting the sub-contractor to resume service under the sub-contract."

The foregoing extracts from our opinion, serve to effectually
settle the question of the defendant's voluntary abandonment of his
sub-contract, and clearly discloses that no further or other putting
in default was necessary.

In defendant's letter of June 30, 1891, he distinctly states, that
the liquidation of the company which he had employed to haul the
mail, and the losses occasioned him thereby, during the six weeks
previous thereto, rendered it impossible for him to continue any
longer. "For," says he, "I am compelled to discontinue from this
day."

Our opinion shows it to be a fact that the postoffice department
acted upon this advice, and made a temporary contract for the trans-
fer of the mails, and that a few days thereafter, having been notified
by the defendant, Woodlief, that he was willing to resume work under
his original contract, the department permitted him to resume the
same.

Having thus stated the legal proposition that Logan under his
sub-contract was "virtually under contract with the government, and
"one of its agents in the mail department, subject to its manage-
"ment and control," and that Woodlief as contractor was, in respect
thereto, "a mere intermediary, to whom the plaintiff, Logan, did
not give notice of his abandonment of his sub-contract," and was
under no obligation to do so; and having further declared that the
postmaster general had permitted the defendant, Woodlief, to re-
sume service under the original contract, subsequent to the termina-
tion of all contractual relations between the government and Logan,
it becomes our duty to apply the evidence to this situation of affairs.

For, it must be borne in mind that this is not the case of the violation of an ordinary contract between two individuals and the assessment of the damages resulting therefrom; but the case of a sub-contractor with the government having his relations cut off by reason of his voluntary abandonment of the mail service, and the renewal on that account of the contract of the original contractor with the government, in his stead.

In the case of a violation of a contract, the obligee would, ordinarily, have a right of action to compel specific performance on the part of the obligor, or claim corresponding damages for his failure to do so; and he would have the right to take up the contract where the obligor left off, and carry it to completion for the purpose of diminishing his loss.

In this case, however, the contract and sub-contract with the government are recognized as being entirely independent of each other, and that each one must be exercised separately and distinctly.

In Lawton vs. Waite, 79 Northwestern Reporter. (No. 4) p. 321, the Wisconsin court dealt with quite a similar contract of a subcontractor for the transportation of the United States mail in the city of Milwaukee, from July 1st, 1895, to June 30th, 1899, and in the course of their opinion, it said:

"While many acts which might constitute negligence are alleged, "they are not characterized expressly as either wrongful or negligent "and they are all asserted to constitute breaches of one, or the other "of the two contracts, which are not set out in extenso. Again: the "sureties are joined as defendants, and judgment demanded against "them jointly with their principal. Such demand can, of course, be "supported only on the ground that their principal has breached some "requirement of the contract, performance of which the sureties have "guaranteed. They have no other connection either with the plain"tiff or with the acts and events out of which his claim arises.

"Their liability must arise, if at all, from the strict words of the "written contract which they have signed.

"Considering, then, first, whether a cause of action ex contractu "is set forth against these demurring defendants, it must be ob"served that many of the contractual undertakings alleged in the com"plaint have no application to them, but only to the other defendants "who executed the original contract with the United States.

The demurrants' duty and liability must be found in the sub-

"*contract,* which it will be noted is *much narrower* than the original.

\*     \*     \*     \*     \*     \*     \*     \*

"We think it plain, therefore, that no privity of contract between "the demurrants and the plaintiff is shown . They contracted alone "with E. A. Chilton (the original contractor) and not with plaintiff, "nor even with the United States, in which contract the government "primarily, and individuals only eventually, have an interest."

The only difference between that case and the one before the court is, the former was an action *ex delicto* and the latter one *ex contractu.*

Relations between the contractor and the government cease, as soon as a sub-contract with another has been made; and when the sub-contract is terminated or broken, the original contract may be renewed and reinstated by the consent of the postal department.

Such is the precise situation here. It is true, that in this condition of affairs, the terms of the sub-contract may be looked into for the purpose of showing any damages that have resulted through the sub-contractor's fault, or in this case, his abandonment of the service.

Therefore, in our opinion, the statement in the brief of counsel, that it was in order to prevent greater loss and damage that he felt compelled to resume his performance of his contract on the 15th of September, 1891, and continue same to its termination in 1894, is entirely inadmissable.

The proof shows—and our former opinion states—that after Logan abandoned his contract in June, 1891, the postal department employed a temporary service and carried the mails upon the account of the government, until September 15, 1891, at the expense of the sub-contractor; and our opinion says, that "the postmaster general permitted the defendant, Woodlief, to resume service under his original contract, *i. e.,* the contract between the defendant and the government; not the sub-contract between Woodlief and Logan."

Thus, it appears manifest, that upon Woodlief's resumption of his original contractual relations with the postal department on the 15th of September, 1891, with the assent and approval of the postmaster general, all contractual relations between Logan and the government, based upon his sub-contract with Woodlief, ceased, likewise, *eo instanti.*

It necessarily results that from and after that date, Woodlief

operated the mails *for his own account,* and collected annually the contract price of four thousand, nine hundred and forty-three dollars, as stipulated, and Logan was eliminated therefrom altogether, except with respect to the damage Woodlief had sustained by his abandonment of the sub-contract.

That, inasmuch as the plaintiff, Woodlief, had voluntarily resumed his original contractual relation with the postal department on the 15th of September, 1891, and thereafter conducted his contract to its final termination on the first of July, 1894, receiving and using the consideration therein stipulated, the engagement was exclusively *his own* during that period of time, and that he was quite as much bound and obligated to supply the necessary equipment for the operation of the mails, as the defendant Logan was, under his sub-contract.

As matters stood, originally, plaintiff's contract with the government was, that he should supply the necessary paraphernalia and equipment, and transport the mails in the manner stipulated, and he was therefor, to receive the price of four thousand, nine hundred and forty-three dollars *per annum,* and by his sub-contract, Logan agreed to carry out Woodlief's contract for that amount, less four hundred dollars *per annum.*

Therefore, it seems reasonable, that when that sub-contract was abandoned, and the original contract had been restored by consent of both Woodlief and the postal department, the obligation was placed upon Woodlief to supply the necessary equipment for the transportation of the mails, at his own expense, and to receive the consideration therefor; and to recover from the defendant the annual profit of four hundred dollars that is stipulated in the sub-contract for a period of three years that intervened between the 1st of July, 1891, and the 1st of July, 1894, *i. e.,* the sum of twelve hundred dollars.

In our view, Woodlief would be by this process placed in the same position he originally occupied under his own contract, and entitled to receive the full measure of the benefit he would have received from the sub-contract with Logan, had it continued in force. But, to place upon the sub-contract the construction which is contended for by plaintiff's counsel, would, in our opinion, do violence to the intention and purpose of the government, as well as that of the contracting parties, and also to the views expressed in our previous decision.

It would be to say, that as one of the consequences of the abandonment of the sub-contract, Logan must not only furnish to Woodlief without expense, an entirely new and complete establishment and outfit for carrying the mails for the entire term of three years, after he had resumed charge on his own account, but 'to pay all the incidental expenses thereof such as are enumerated. in the exhibits an nexed to plaintiff's petition.

In our conception, the damages which plaintiff is entitled to re cover may be stated in general terms to be, (1) the cost of the temporary service of the mails during the period of two and one-half months; (2) the amount by the government deducted from the sum due Woodlief on account. of loss or depredation upon the mails in April, 1891, and alleged to be two thousand, five hundred and forty-eight dollars and sixty-four cents; (3) and the sum of $400 per annum stipulated in the sub-contract as the profit due the plaintiff. Woodlief.

Thus concluding, we are of the opinion, that the purposes of justice would be subserved between the parties by awarding the plaintiff a judgment against George C. Logan, (1) for the sum of one thousand, five hundred and eighty-three dollars and sixty-six cents, with legal interest from judicial demand, as the cost of the temporary service established by the government for two and one-half months, less the amount of seven hundred and eighty-five dollars. which was due Logan under his contract for two months, leaving a balance of eight hundred and eighteen dollars and sixty-six cents (818.66) due the government—this calculation being based upon admissions of the defendants; (2) for the additional sum of two thousand, five hundred and forty-eight dollars, and sixty-four cents ($2,548.64), as the amount which the postal department deducted from the price stipulated in the contract, as due Woodlief, on account of loss or depredation upon the mail on the ——— day of April, 1891, with like interest: (3) and for the further sum of four hundred dollars per annum, for each of the three years which intervened between the 1st of July, 1891, and the 1st of July, 1894, as the amount of the profit that is stipulated in the sub-contract which Woodlief is entitled to receive with interest.

While the foregoing views are applicable to George C. Logan as principal, they are more applicable to his sureties, for the reason, that they are entitled to a strict construction of their obligations.

and nothing can be taken against them by implication or inference.

It is therefore ordered and decreed that the plaintiffs do have and recover, from George C. Logan, (1) the sum of one thousand, five hundred and eighty-three dollars and sixty-six cents ($1,583.66), with legal interest from judicial demand, subject to a credit of seven hundred and sixty-five dollars ($765.00), bearing date September 15th, 1891; (2) the further sum of two thousand, five hundred and forty-eight dollars and sixty-four cents, with legal interest from same date; (3) and the further sum of four hundred dollars per annum from the 1st day of July, 1891, to the 1st day of July, 1894; with legal interest on each installment from the termination of each year, respectively.

And it is further ordered and decreed, that there be judgment in favor of the plaintiff and against each of the sureties on the bond of George C. Logan, to-wit: (1) A. A. Woods, (2) Mrs. Linsay B. Hill, widow in community of the late Alexander Hill, deceased, and James Davidson Hill, as sole heir of said Alexander Hill; (3) and against the heirs of Samuel Logan, five in number—each for their *virile* share of the amount for which judgment is given against George C. Logan, principal, on the basis of the obligation incurred in the aforesaid bond.

It is further ordered that the cost of appeal be taxed against the plaintiff and appellee.

BLANCHARD, J., concurs in the decree.

## ON APPLICATION FOR REHEARING.

BLANCHARD, J. In the opinion of the court herein on the merits it was stated, in general terms, as the conclusion of the court, and as a just settlement of this long protracted litigation, that plaintiff should recover certain sums therein mentioned. One of these sums was the cost of the temporary service of the mails during the period of two and one-half months and it was put at $1583.66, subject to a credit of $765. This temporary service of the mails was at the rate of $10,000 per year, and the allowance should be for two months, which at that rate would be $1666.66 instead of $1583.66. The decree handed down will be corrected accordingly.

The judgment of the court decreed against George C. Logan

the recovery of the full amount of the several sums found to be due, and against each of the sureties on the bond of said Logan, to-wit: (1) A. A. Woods; (2) Mrs. Linsay B. Hill, widow in community of the late Alexander Hill, deceased, and James Davidson Hill, as sole heir of said Alexander Hill; (3) the heirs of Samuel Logan, deceased, five in number—for their *virile* share of the amount for which judgment is given against George C. Logan, principal. This is an oversight so far as the sureties are concerned. The judgment against them should not be for their *virile* share merely.

The language of the obligation is: "The said party of the second part and his sureties aforesaid do *severally* undertake, covenant and agree, and do bind themselves to and with the party of the first part in the sum of ten thousand dollars ($10,000) as follows: Samuel L. Logan, twenty-five hundred dollars; Alexander Hill, twenty-five hundred dollars; Winfield W. Gauche, twenty-five hundred dollars; and Alfred A. Woods, twenty-five hundred dollars."

And the last clause in the body of the obligation is: "To the faithful performance of each and every covenant and agreement hereinbefore mentioned, the parties *do bind themselves to the extent of the amount herein specified, and each of them and their heirs and personal representatives, etc.*"

The law governing obligations of this character is found in part in C. C. Arts. 2077, 2078 and 2084.

The first reads: "When there are more than one obligor or obligee named in the same contract, the obligation it may produce may be either *several,* or joint, or *in solido,* both as regards the obligor and the obligee."

The second (C. C. 2078), defining *several* obligations, says: "*Several* obligations are produced when what is promised by one of the obligors is not promised by the other, *but each one promises separately for himself to do a distinct act*; such obligations, although they may be contained in the same contract, are considered as much individual and distinct as if they had been different contracts, and made at different times."

The third (C. C. 2084) declares: "*Several* obligations, although created by one act, have no other effect than the same obligation would have had if made by separate contracts." * * *

It is thus apparent that the sureties on the bond did not bind themselves *jointly,* each for his virile share of the obligation it pur-

ported, but each bound himself separately and *severally* to the extent of $2500 of the same. From no one of them could more than $2500 be recovered, but as much as $2500 could be recovered from each.

It follows that whatever aggregate indebtedness may be decreed against George C. Logan, the principal on the bond, for that indebtedness his said sureties are responsible each to the extent of $2500. There could, of course, be but *one satisfaction* of the amount which is decreed against the principal, but to accomplish this satisfaction the sureties are each respectively bound to the extent of $2500— the amount for which each signed as surety. Each party who signed this obligation as surety said in effect: 'Should the principal fail in his duties, I will repair the damage occasioned thereby to the extent of $2500.' The sureties stipulated and determined the extent of their liability, not for the full amount of the bond, nor for equal portions, but in certain determined and specified amounts.

Teutonia National Bank vs. Morgan, 33 La. Ann. 735; State vs. Tax Collector, 40 La. Ann. 240.

The former decree of the court will be corrected in this regard, as also in the particular that there are *seven* and not *five* heirs of Samuel L. Logan, who was one of the sureties.

We find no judgment was rendered in the lower court against Winfield W. Gauche, one of the sureties, and presume from that he was not cited.

Defendants complain that the decree awards interest on $400 for each of the years 1892, 1893 and 1894, to run from the first day of July of each year. They urge that interest on these sums should be awarded only *from judicial demand,* and point to the prayer of the petition as sanctioning this.

It is true that the prayer of the petition asks for interest from judicial demand on certain sums *set up in the petition* as being due. But the court, judging the case on the issues made by the pleadings and guided by the evidence adduced, determined it on different lines, and, in so doing, reached the conclusion that as to the $400 per year for the three years mentioned, the obligation of defendants toward the plaintiff included as well the interest on those installments from their maturity, as the principal. On this theory, the interest on those sums might well have been calculated and added to the principal, and award made for the total sum thus found due, with

legal interest thereon from judicial demand. Instead, judgment was given for the sums aforesaid, with interest from the time same became due respectively.

We do not think injustice has been done and the former decree in this particular should not be disturbed.

The same is true as to an additional credit which defendants urge should be allowed George C. Logan.

The case was gone over carefully and an adjustment reached of which defendants can not justly complain. What they represent in reference to this credit is only by way of suggestion. We do not understand that they ask for a new trial because of the refusal to recognize it. The judgment in plaintiff's favor should not be reduced by further credits.

It is, therefore, ordered that the former decree herein rendered on June 12, 1899, be amended so as to read as follows: It is adjudged and decreed that the plaintiff do have and recover of George C. Logan the sum of one thousand, six hundred and sixty-six and 66-100 dollars, with legal interest from judicial demand, subject to a credit of seven hundred and sixty-five dollars paid as of date September 15, 1891; also that he do have and recover the further sum of two thousand, five hundred and sixty-eight and 64-100 dollars, with legal interest from same date; and also the further sum of four hundred dollars per annum for each of the years 1892, 1893 and 1894, with legal interest on the first from July 1, 1892, and the second, from July 1, 1893, and the third, from July 1, 1894.

It is further ordered, etc., that plaintiff do have and recover *severally* of and against the sureties on the bond of said George C. Logan, to-wit: Alfred A. Woods, Alexander Hill, deceased (represented herein by Mrs. Linsay B. Hill, widow in community, and James Davidson Hill as sole heir) and Samuel L. Logan, deceased (represented herein by his heirs as named in the petition of plaintiff), the sums, with interest, herein decreed against George C. Logan —this judgment to be operative against the said Alfred A. Woods up to the sum of twenty-five hundred dollars and no more; against Mrs. Linsay B. Hill, widow, and Jas. Davidson Hill, together, up to the sum of twenty-five hundred dollars and no more; and against the heirs of Samuel L. Logan, seven in number, up to the sum of twenty-five hundred dollars and no more—with the stipulation that

there shall be but one satisfaction of the entire amount due plaintiff.

It is further ordered, etc., that there be judgment against defendants *in solido* for the costs of both courts.

Rehearing refused.